STATE OF CONNECTICUT *v.* WILLIAM H. MASON

SPEZIALE, C. J., PETERS, PARSKEY, ARMENTANO and SHEA, Js.

---

Argued November 10, 1981—decision released March 30, 1982

*Richard Emanuel,* assistant public defender, with whom, on the brief, was *Jerrold H. Barnett,* public defender, for the appellant (defendant).

*Ernest J. Diette, Jr.,* assistant state's attorney, with whom, on the brief, were *Donald A. Browne,* state's attorney, and *Frank Maco,* assistant state's attorney, for the appellee (state).

SPEZIALE, C. J. After a jury trial, the defendant was convicted of murder in violation of § 53a-54a (a) of the General Statutes.[1] The defendant has

---

[1] "[General Statutes] Sec. 53a-54a. MURDER DEFINED. AFFIRMATIVE DEFENSES. EVIDENCE OF MENTAL CONDITION. CLASSIFICATION. (a) A person is guilty of murder when, with intent to cause the death of another person, he causes the death of such person or of a third

appealed, claiming error in (1) the denial of his right to effective assistance of counsel, (2) the decision of the trial court not to admit evidence concerning one of the deceased's convictions, and (3) the instructions to the jury on intent. We find no error.

The jury could reasonably have found the following facts: On September 1, 1978, the defendant fired a single gunshot at Wilbert Hill which resulted in Hill's death thirty-five days later. The incident arose from a dispute concerning the right to run an outdoor dice game near the intersection of Walter and Pembroke Streets in Bridgeport. A police officer had observed the deceased and the defendant arguing a few hours before the shooting. A witness for the state testified that prior to firing the fatal shot the defendant stated "I'm going to shoot you, you mother fucker" and that after the shot had been fired, the defendant said "I shot you, you mother fucker now I'm going," at which point the defendant fled the scene. The defendant voluntarily surrendered to the police eight days later.

The defendant did not deny that he shot Hill, but he maintained throughout that he had fired in self-defense and only with the intent to incapacitate, not to kill. The defendant presented his own eye-

person or causes a suicide by force, duress or deception; except that in any prosecution under this subsection, it shall be an affirmative defense that the defendant acted under the influence of extreme emotional disturbance for which there was a reasonable explanation or excuse, the reasonableness of which is to be determined from the viewpoint of a person in the defendant's situation under the circumstances as the defendant believed them to be, provided nothing contained in this subsection shall constitute a defense to a prosecution for, or preclude a conviction of, manslaughter in the first degree or any other crime."

witness who testified that just prior to the shooting he saw the deceased moving quickly toward the defendant while the crowd at the game was dispersing as if they knew something was about to happen. This witness then saw the deceased reach for something in his pants or jacket at which point the defendant fired. The defendant also produced two character witnesses who testified to the deceased's violent reputation and to the defendant's reputation for non-violence. The defendant testified on his own behalf and stated that because he believed that the deceased was about to shoot him he shot first, but only with the intent to incapacitate the deceased so as to prevent him from drawing his gun. No gun was found on the deceased by the police.

## I

### INEFFECTIVE ASSISTANCE OF COUNSEL

The defendant's principal claim of error is that he was denied the effective assistance of counsel guaranteed by the sixth and fourteenth amendments to the United States constitution and article first, section eight of the Connecticut constitution. The right to counsel is the right to the effective assistance of counsel. *McMann* v. *Richardson,* 397 U.S. 759, 771 n.14, 90 S. Ct. 1441, 25 L. Ed. 2d 763 (1970); *Reece* v. *Georgia,* 350 U.S. 85, 90, 76 S. Ct. 167, 100 L. Ed. 77 (1955); *Powell* v. *Alabama,* 287 U.S. 45, 71, 53 S. Ct. 55, 77 L. Ed. 158 (1932). This right is equally applicable whether defense counsel is court-appointed, or, as in the present case, privately-retained counsel. *Cuyler* v. *Sullivan,* 446 U.S. 335, 344–45, 100 S. Ct. 1708, 64 L. Ed. 2d 333 (1980).

The standard employed by this court to assess the effectiveness of counsel is whether the defense

counsel's performance was " 'reasonably competent or within the range of competence displayed by lawyers with ordinary training and skill in the criminal law.' " *State* v. *Clark,* 170 Conn. 273, 283, 365 A.2d 1167, cert. denied, 425 U.S. 962, 96 S. Ct. 1748, 48 L. Ed. 2d 208 (1976); see *State* v. *Just,* 185 Conn. 339, 370, 441 A.2d 98 (1981); *Siemon* v. *Stoughton,* 184 Conn. 547, 554, 440 A.2d 210 (1981); *State* v. *Barber,* 173 Conn. 153, 155–56, 376 A.2d 1108 (1977); *State* v. *McClain,* 171 Conn. 293, 301, 370 A.2d 928 (1976); *Gentry* v. *Warden,* 167 Conn. 639, 645–46, 356 A.2d 902 (1975). " 'The defendant's burden is to show that his counsel's conduct fell below that standard and that the lack of competency contributed to the conviction.' " *State* v. *Clark,* supra.

The defendant, now represented by a public defender, alleges numerous errors by his privately-retained trial counsel which are claimed to amount to a denial of the defendant's right to effective assistance of counsel. The alleged errors by counsel concern harmful and prejudicial evidence which either was elicited and introduced into evidence by defense counsel or was admitted without objection.[2]

This court has emphasized in other cases that a claim of ineffective assistance of counsel is more properly pursued on a petition for new trial or on a petition for a writ of habeas corpus rather than

---

[2] The defendant maintains that various actions by trial counsel demonstrated an unfamiliarity with and inability to employ basic principles of criminal trial procedure. Among the actions of trial counsel alleged by the defendant to constitute ineffective assistance are the following: During the cross-examination of the state's eyewitness, defense counsel, in an apparent attempt to impeach by prior inconsistent statements, elicited evidence (i.e., that the defendant had used the word "kill" rather than "shoot" and that he had expressed a hope that the deceased would die) which manifested the

on direct appeal.[3] *State* v. *Just,* supra, 370–71; *State* v. *Barber,* supra, 154–55. Absent the evidentiary hearing available in the collateral action, review in this court of the ineffective assistance claim is at best difficult and sometimes impossible. The evidentiary hearing provides the trial court with the evidence which is often necessary to evaluate the competency of the defense and the harmfulness of any incompetency. "The defendant, his attorney, and the prosecutor have an opportunity to testify at such a hearing as to matters which do not appear of record at the trial, such as . . . whether, for tactical reasons, objection was not made to certain adverse testimony, just how much information the defense attorney received from his client about statements made to others, and other such relevant matters." *State* v. *Barber,* supra, 155.

The present case is one where the record on appeal is inadequate to allow this court to decide whether the performance of trial counsel was not reasonably competent nor within the range of com-

---

defendant's intention to murder the deceased. Also during this cross-examination, defense counsel introduced as a full exhibit an otherwise inadmissible affidavit by a police officer detailing investigative interviews which was later read to the jury by the state. Defense counsel also directly elicited and failed to object to evidence concerning *details* of the defendant's prior convictions, charges pending against the defendant, and charges on which he was never convicted.

[3] We note that a defendant may well be forced to raise a claim of ineffective assistance on direct appeal, even when the record is inadequate for review, because of the possibility that if this is not done collateral review of the claim may be precluded by a finding that the appellate process has been deliberately bypassed. See *Turcio* v. *Manson,* 186 Conn. 1, 3–4, 439 A.2d 437 (1982); *Blue* v. *Robinson,* 173 Conn. 360, 369–70, 377 A.2d 1108 (1977); *Vena* v. *Warden,* 154 Conn. 363, 366–67, 225 A.2d 802 (1966). Whether there has been a deliberate bypass is a factual question which must be determined on a case by case basis.

petence exercised by attorneys with ordinary training and skill in criminal law, and, if so, whether such performance contributed to the defendant's conviction. Therefore, we can not find error on this claim. This conclusion, of course, does not preclude the defendant from pursuing this claim in the appropriate collateral action.

## II

### ADMISSION OF DECEASED'S CONVICTION

A significant aspect of the defendant's claim of self-defense involved demonstrating the violent character and reputation of the deceased. The defendant assigns as error the trial court's refusal to allow the defendant to introduce evidence concerning the deceased's conviction for the unlawful discharge of a firearm in violation of § 53-203 of the General Statutes.[4]

This court has made clear that in a homicide prosecution where self-defense is claimed the defendant may employ "evidence of the deceased's conviction of crimes of violence" to attempt to show the violent character of the deceased. *State* v. *Miranda,*

[4] At the time of the deceased's conviction in 1970, § 53-203 (Rev. to 1968) provided as follows: "Sec. 52-203. UNLAWFUL DISCHARGE OF FIREARMS. Any person who discharges any firearm in any city or borough, except on military occasions, without permission first obtained from the mayor of such city or the warden of such borough, shall be fined not more than seven dollars or imprisoned not more than thirty days. The proprietor of any private military school which has received, by authority of the general assembly, arms or accoutrements from the state, or the principal person having charge of such school, who fires or causes to be fired any cannon in the limits of any city or borough, without a permit from the mayor of such city or the warden of such borough, shall be fined not more than two hundred dollars; but in other respects such school may be conducted according to the military rules established for its government."

176 Conn. 107, 114, 405 A.2d 622 (1978). The admission of such evidence, however, lies within the discretion of the trial court. Id., 114.

The trial court excluded evidence of the deceased's unlawful discharge conviction because the conviction lacked the element of violence. The defendant contests this conclusion. It is not necessary for us to decide whether the conviction contained the requisite element of violence because, even if it is assumed that it did, the exclusion of evidence concerning the conviction was harmless. In view of the evidence concerning the deceased which the defendant was allowed to introduce,[5] evidence concerning the unlawful discharge conviction would have been merely cumulative. See *State v. Gooch*, 186 Conn. 17, 24, 438 A.2d 867 (1982); *State v. Jones*, 132 Conn. 682, 683, 47 A.2d 185 (1946). There was, therefore, no abuse of discretion by the trial judge in excluding it.

## III

### INSTRUCTIONS ON INTENT

The defendant claims two errors in the trial court's instructions to the jury on the element of intent: (A) the instructions violated the rule of *Sandstrom* v. *Montana,* 442 U.S. 510, 99 S. Ct. 2450, 61 L. Ed. 2d 39 (1979); and, (B) the instructions were inadequate because they did not include the statutory definition of "intent" found in General Statutes § 53a-3 (11).

---

[5] The defendant was allowed to introduce evidence of three convictions of the deceased, two for breach of the peace and one for assault. The defendant also produced testimony from two character witnesses who testified that the deceased had a reputation for violence, for carrying a gun, and for sometimes firing a gun at night. The defendant also testified about his personal knowledge of the deceased's reputation and about specific instances of violent behavior and use of weapons by the deceased.

## A

### *Sandstrom* CLAIM

The defendant acknowledges that this claim of error was not properly preserved in the court below. See Practice Book §§ 852, 854, 3063. We have held previously, however, that a claim of error under *Sandstrom* v. *Montana,* supra, falls within the "exceptional circumstances" rule of *State* v. *Evans,* 165 Conn. 61, 70, 327 A.2d 576 (1973), and, therefore, may be reviewed even though not properly preserved below. *State* v. *Johnson,* 185 Conn. 163, 167, 440 A.2d 858 (1981); *State* v. *Arroyo,* 180 Conn. 171, 173-74, 429 A.2d 457 (1980).

During its instructions on intent, the trial court twice stated: "Every person is presumed to intend the natural and necessary consequence of his acts." In *Sandstrom* v. *Montana,* supra, the United States Supreme Court held that a jury instruction that " '[t]he law presumes that a person intends the ordinary consequences of his voluntary acts' " violated the defendant's due process rights because a reasonable jury could have interpreted the instruction as a burden-shifting presumption like that invalidated in *Mullaney* v. *Wilbur,* 421 U.S. 684, 95 S. Ct. 1881, 44 L. Ed. 2d 508 (1975), or as a conclusive presumption like those invalidated in *United States* v. *United States Gypsum Co.,* 438 U.S. 422, 98 S. Ct. 2864, 57 L. Ed. 2d 854 (1978), and *Morissette* v. *United States,* 342 U.S. 246, 72 S. Ct. 240, 96 L. Ed. 288 (1952). *Sandstrom* v. *Montana,* supra, 517-24.

Although the instruction language in this case is similar to the language found to be erroneous in *Sandstrom* v. *Montana,* supra, the rule of *Sand-*

*strom* may not be oversimplified. *State* v. *Pina,* 186 Conn. 261, 263, 440 A.2d 967 (1982). *Sandstrom* does not invalidate, for example, an " 'entirely permissive inference or presumption, which allows— but does not require—the trier of fact to infer the element fact from proof by the prosecutor of the basic one and that places no burden of any kind on the defendant.' *Ulster County Court* [v. *Allen,* 442 U.S. 140, 157, 99 S. Ct. 2213, 60 L. Ed. 2d 777 (1979)]." *State* v. *Arroyo,* supra, 175. It is not the use of the word "presume" itself which renders an instruction invalid; *State* v. *Arroyo,* supra; rather it is the "lack of qualifying instructions as to the legal effect of the presumption," making it possible for a reasonable jury to interpret the presumption in an unconstitutional manner. *Sandstrom* v. *Montana,* supra, 517.

On many occasions this court has found no error in instructions containing language similiar to that invalidated in *Sandstrom* because the challenged instructions contained other language not present in the *Sandstrom* instructions which was sufficiently precise or elaborate to prevent the jury from applying the instructions in an unconstitutional manner. *State* v. *Pina,* supra, 264; *State* v. *Stankowski,* 184 Conn. 121, 148–53, 439 A.2d 918, cert. denied, 454 U.S. 1052, 102 S. Ct. 596, 70 L. Ed. 2d 588 (1981); *State* v. *Brokaw,* 183 Conn 29, 34, 438 A.2d 815 (1981); *State* v. *Truppi,* 182 Conn. 449, 452–59, 438 A.2d 713 (1980), cert. denied, 451 U.S. 941, 101 S. Ct. 2024, 68 L. Ed. 2d 329 (1981); *State* v. *Nemeth,* 182 Conn. 403, 411, 438 A.2d 120 (1980); *State* v. *Vasquez,* 182 Conn. 242, 249–53, 438 A.2d 424 (1980); *State* v. *Maselli,* 182 Conn. 66, 77–78, 437 A.2d 836 (1980), cert. denied, 449 U.S. 1083, 101 S. Ct. 868, 66 L. Ed. 2d 807 (1981); *State* v. *Perez,*

181 Conn. 299, 311–16, 435 A.2d 334 (1980); *State v. Arroyo,* supra, 173–81. The charge in this case contained the same type of elaborate and precise language which cured the otherwise ambiguous use of the word "presume" and, thereby, prevented the jury from applying the instructions in an unconstitutional manner.[6] There was, therefore, no *Sandstrom* error.

---

[6] The trial court's instructions on intent included the following:

"The second element which we are concerned with, which the State must prove beyond a reasonable doubt, is that the person causing the death of a person must have done so with intent to cause the death. In other words, the State must prove beyond a reasonable doubt that the accused, Mr. Mason, shot Mr. Hill with the intent to cause his death.

"Now, intent is a mental process, a person's intention may be inferred from his conduct. Every person is presumed to intend a natural and necessary consequence of his acts. And in this case, the State asked you to infer intent, Mr. Mason's intent from his pointing a gun at and shooting Mr. Hill.

"Now, what a person's purpose or intention has been is very largely a matter of inference. A person may take the stand and testify directly as to what his purpose or intention was and that testimony you can believe or not, according to if you think it warrants belief or not. But, no witness can expect to come here and testify that he looked into another person's mind and saw therein a certain purpose of [sic] intention. The only way in which a jury can determine what a person's purpose or intention was at any given time, aside from that person's own testimony or the testimony of others, is by determining what that person's conduct was, and what the circumstances were surrounding that conduct, and from those infer what his purpose or intentions were. To draw such an inference is not only your privilege, but it is also your duty as jurors, provided of course its inference drawn is reasonably done.

"In this case, it would be part of your duty, ladies and gentlemen, to draw all reasonable inferences from the conduct of the accused in light of the surrounding circumstances as to what his purpose or intention was at the time of the incident. So, in order for the accused to be found guilty of the charge of murder, you must find beyond a reasonable doubt that he had an intent to cause the death of Wilbert Hill. If you do not find that proven beyond a reasonable doubt, that the accused had the intent to cause the death of Wilbert Hill, you would not find him guilty of murder."

## B

DEFINITION OF "INTENT"

The defendant acknowledges that this claim of error was not properly preserved in the court below. See Practice Book §§ 852, 854, 3063. This unpreserved error, however, is reviewable under *State* v. *Evans,* supra, because it falls under the "exceptional circumstances" therein contemplated. *State* v. *Kurvin,* 186 Conn. 555, 558, 442 A.2d 1327 (1982).

One of the elements of murder under General Statutes § 53a-54a (a) is that the accused act "with intent to cause the death of another person." The state is required to prove all of the elements of the charge, including the element of intent, beyond a reasonable doubt. *In re Winship,* 397 U.S. 358, 364, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970); *State* v. *Griffin,* 175 Conn. 155, 162–63, 397 A.2d 89 (1978). "The court was required to instruct the jury as to the essential elements of the crime and the criminal intent necessary to commit the offenses charged." *State* v. *Sumner,* 178 Conn. 163, 170, 422 A.2d 299 (1979).

Jury instructions need "not be exhaustive, perfect or technically accurate," so long as they are "correct in law, adapted to the issues and sufficient for the guidance of the jury." *Castaldo* v. *D'Eramo,* 140 Conn. 88, 94, 98 A.2d 664 (1953); see *Messina* v. *Iannucci,* 174 Conn. 275, 278, 386 A.2d 241 (1978); *State* v. *Sawicki,* 173 Conn. 389, 396, 377 A.2d 1103 (1977); Maltbie, Conn. App. Proc. § 76. This court considers a charge in its entirety. An error in instructions in a criminal case is reversible error when it is shown that it is reasonably *possible* for errors of constitutional dimension or reasonably

*probable* for nonconstitutional errors that the jury were misled. *State* v. *Ruiz,* 171 Conn. 264, 273–74, 368 A.2d 222 (1976); *State* v. *Rose,* 169 Conn. 683, 687–88, 363 A.2d 1077 (1975).

To provide adequate instructions to the jury on an element of an offense, the trial court must explain what the element means and, in the appropriate context, provide the jury with guidelines for determining whether the element has been proved beyond a reasonable doubt. In this case there is no claim that the trial court failed to give adequate guidelines on how the jury should evaluate the defendant's intent.[7] Cf. *State* v. *Kurvin,* 186 Conn. 555, 571–72, 442 A.2d 1327 (1982) *(Speziale, C. J., dissenting).* It is claimed, however, that the trial court failed to explain adequately what is meant by "intent," because the court did not read the jury the applicable statutory definition. Section 53a-3 (11) of the General Statutes[8] expressly states the definition of the word "intentionally" and is, therefore, directly applicable to the charge against the defendant.[9]

The defendant maintains that the trial court failed to define "intent" adequately and, consequently, he was prejudiced. We have considered, however, the entire charge and find that the trial

[7] See footnote 6, supra.

[8] "[General Statutes] Sec. 53a-3. DEFINITIONS. Except where different meanings are expressly specified, the following terms have the following meaning when used in this title: . . . (11) A person acts 'intentionally' with respect to a result or to conduct described by a statute defining an offense when his conscious objective is to cause such result or to engage in such conduct . . . ."

[9] Although the murder statute, § 53a-54a (a), is cast in terms of "intent" rather than the "intentionally" of the statutory definition, § 53a-3 (11), it is clear that the definition applies to all sections of the penal code which use any form of the word "intent."

court's instructions on intent were adequate to explain the meaning of "intent" to the jury. Although it would have been preferable for the court to have read § 53a-3 (11) to the jury, the record indicates that on five occasions during the course of the instructions the court referred not just to "intent" but to the accused's "purpose, or intent."[10] The court made it clear that "intent" was synonymous with "purpose," thereby adequately explaining that "intent," as defined by § 53a-3 (11), means "conscious objective" or purpose. The jury could not have been misled with such an instruction. There was, therefore, no error in the trial court's explanation of "intent."

There is no error.

In this opinion the other judges concurred.