STATE OF CONNECTICUT *v.* HENRY CARTER
(14508)

PETERS, C. J., CALLAHAN, BORDEN, NORCOTT and PALMER, Js.

Argued September 21, 1993—decision released February 1, 1994

*Neal Cone,* assistant public defender, for the appellant (defendant).

*Frederick W. Fawcett,* assistant state's attorney, with whom, on the brief, were *Donald A. Browne,* state's attorney, and *Robert A. Lacobelle,* former assistant state's attorney, for the appellee (state).

PALMER, J. A jury found the defendant, Henry Carter, guilty of the crime of murder in violation of General

Statutes § 53a-54a.[1] The defendant has appealed from the judgment of the trial court sentencing him to a term of imprisonment of forty-five years.[2] The defendant claims that the trial court improperly: (1) denied the defendant's request to open his case, after he had rested, to introduce evidence of the victim's criminal record; (2) excluded evidence of the prior criminal record of a state's witness; and (3) instructed the jury on the issues of intent and motive. We agree with the defendant on the first issue and, on that basis, reverse the judgment of conviction and remand the case for a new trial.[3]

The jury could reasonably have found the following facts. On the afternoon of May 31, 1990, the Bridgeport police received a report of a shooting at Lugo's Market, a grocery store located on the east side of the city. When a police officer arrived at the market, he found the victim, Angel Diaz, lying face up on the floor, suffering from multiple gunshot wounds to the chest and abdomen. The victim was transported by ambulance to an area hospital where he later died from those wounds.

---

[1] General Statutes § 53a-54a provides in relevant part: "MURDER. (a) A person is guilty of murder when, with intent to cause the death of another person, he causes the death of such person . . . .

"(c) Murder is punishable as a class A felony . . . ."

[2] The defendant appeals directly to this court pursuant to General Statutes § 51-199 (b), which provides in relevant part: "The following matters shall be taken directly to the supreme court . . . (3) an appeal in any criminal action involving a conviction for a capital felony, class A felony, or other felony . . . for which the maximum sentence which may be imposed exceeds twenty years . . . ."

[3] The defendant also claims that certain comments made by the prosecutor during closing argument were improper, and that the combined effect of the alleged trial errors requires reversal of the defendant's conviction. It is not necessary for us to reach these issues. We do consider, however, the defendant's claims concerning the trial court's ruling on the admissibility of the witness' criminal record, and the trial court's instructions on motive and intent, because these issues are likely to arise at a new trial.

Salvador Lugo, the owner of the market, had been alone in his store late that afternoon when he observed the victim enter the market, select a can of beer, and proceed into a shopping aisle near the front of the market. Lugo next observed the defendant enter the store and turn into the same shopping aisle as the victim. Due to the height of the market's display shelves, Lugo could not see into the aisle occupied by the victim and the defendant, and he heard no conversation between them. Moments after the defendant had entered the shopping aisle, however, Lugo heard three gunshots from the vicinity of the aisle and immediately thereafter observed the defendant walk slowly out of the store. Lugo then proceeded to the aisle from which the shots had been fired and found the victim lying on the floor. The victim's breathing was labored and he was bleeding from the chest.

Lugo, who was acquainted with the defendant, provided the police with the defendant's description and directions to the defendant's home, which was located near the market. When the police arrived at the defendant's home, they were met at the door by the defendant's mother, Patricia Lindsay. She told the police that she resided there with her husband, Forrest Lindsay, and the defendant. In response to questioning by the police, Patricia Lindsay stated that her husband kept a handgun at their residence. She voluntarily produced the handgun, a .38 caliber Rossi revolver, for the police, who noted the model and serial number of the handgun and returned it to her. The police also obtained Patricia Lindsay's consent to search her home for the defendant, whom the police wanted to question, but they did not find him there.

The following day, while searching for additional evidence at the market, the police discovered a bullet lodged behind an empty beer can in the area of the store where the victim had been shot. The police returned

to the defendant's home and, with Forrest Lindsay's permission, took possession of the .38 caliber Rossi revolver. An autopsy of the victim's body revealed that his death had resulted from three gunshot wounds, including a wound caused by a bullet that had entered the victim's back and pierced his aorta. Subsequent investigation determined that one of the two bullets extracted from the victim's body and the bullet recovered from the market had been fired from the .38 caliber Rossi revolver obtained by the police from Forrest Lindsay.[4]

The defendant was arrested for murder late in the evening of May 31, 1990. After he had been advised of his *Miranda*[5] rights, the defendant gave the police a written, signed statement in which he acknowledged that he had been in Lugo's Market at the time the victim had been shot. He denied, however, that he had been involved in the shooting, and instead described the perpetrator as a "white or Hispanic" male whom he could not identify. At trial, the defendant testified that he had, in fact, shot the victim, but that he had done so in self-defense. The jury found the defendant guilty of the crime of murder.

## I

The defendant first claims that the trial court's refusal to allow him to present additional evidence immediately after he had rested his case and prior to the closing arguments of counsel constituted an abuse of discretion and deprived him of his constitutional right to present a defense as guaranteed by the sixth and fourteenth amendments to the United States consti-

---

[4] As a result of substantial surface damage to a second .38 caliber bullet recovered from the victim's body, the state's ballistics expert could not determine whether it also had been fired from the revolver turned over to the police by Forrest Lindsay.

[5] *Miranda* v. *Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

tution.[6] Specifically, the defendant argues that he is entitled to a new trial because the trial court improperly excluded evidence of the victim's convictions for crimes material to the defendant's claim of self-defense. We agree.[7]

The following background is relevant to this claim. The defendant testified at trial that the victim was a drug dealer who had operated his narcotics trafficking business across the street from the defendant's home. The defendant also testified that in August, 1989, he had been shot in the back by the victim, not far from the defendant's residence,[8] that he had witnessed the victim's participation in several other "shootouts," including one in which a bullet had been fired into the defendant's home, and that he had been aware that the victim had been convicted of assault and drug dealing. According to the defendant, he had become so fearful of the victim and so apprehensive of the drug related violence for which the victim and his associates were responsible that, in September, 1989, he had moved to Georgia, returning to Bridgeport in February, 1990, only after having been informed that the victim had been jailed on drug trafficking

---

[6] The defendant also claims a violation of his rights under article first, § 8, of the Connecticut constitution. Because he has failed to provide an independent analysis of his claim under the state constitution, we shall limit our review of this issue to the defendant's claim under the United States constitution. See State v. Walton, 227 Conn. 32, 62 n.24, 630 A.2d 990 (1993); State v. Santiago, 224 Conn. 325, 328 n.4, 618 A.2d 32 (1992).

[7] Our review of the record indicates that the defendant's federal constitutional claim that the trial court improperly limited his right to present a defense was not specifically raised by the defendant at trial. Therefore, this claim is reviewable only under State v. Golding, 213 Conn. 233, 567 A.2d 823 (1989). We conclude that the defendant has satisfied all of the conditions set forth in Golding concerning unpreserved constitutional claims; id., 239–40; and, therefore, that he is entitled to full appellate review of his claim.

[8] The defendant testified that he had been treated for the gunshot wounds inflicted by the victim in that incident and that he had reported the assault to the police.

charges.[9] The defendant further testified that, on May 30, 1990, the day before he fatally shot the victim, he had observed the victim and several associates selling drugs in front of the defendant's home. The defendant noted that the victim had been in possession of a handgun at that time. The next afternoon, while the defendant waited for a bus near his home, he had been approached by several of the victim's associates who had demanded to know why the defendant had been watching the victim's activities the day before. According to the defendant, he had assured them that he had no interest in the victim or the victim's activities. Shortly after that confrontation, the defendant had left the bus stop and had started to walk home. On his way home, the defendant stopped to purchase some items at Lugo's Market, where he happened upon the victim in one of the store's shopping aisles. The defendant claimed to have been so frightened of the victim that he had decided to leave the store immediately upon having seen the victim. As the defendant walked past the victim on his way out of the market, however, the victim struck him on the back of the head with a hard object, causing the defendant to lose his balance. The defendant testified that as he was falling, he had observed the victim reach toward his waistline as if to retrieve a gun. Believing that the victim intended to shoot him, the defendant drew a gun and shot the victim several times.

The defense rested its case in the late morning of August 23, 1991,[10] after having presented the testimony of the defendant and several other witnesses. The

[9] The defendant's mother, Patricia Lindsay, also testified about the constant drug dealing and gunplay in the neighborhood, and she identified the victim as a regular participant in those activities. In addition, she corroborated the defendant's testimony that he had not returned to Connecticut from Georgia until she and the defendant had believed that it was safe for him to do so.

[10] The trial had commenced on August 6, 1991.

state's brief rebuttal case, which lasted until 11:45 a.m., consisted of the testimony of Bridgeport police detective Joseph Sherbo, who had already testified during the state's case-in-chief. Upon the conclusion of the presentation of evidence, the court announced a luncheon recess until 1 p.m., at which time counsel were to proceed with closing arguments to the jury. Immediately after the recess and before the court summoned the jury to return to the courtroom for closing arguments, however, the defendant moved for permission to introduce three criminal convictions of the victim: a January 20, 1989 conviction of assault in the third degree; a March 7, 1990 conviction, also of assault in the third degree; and a March 7, 1990 conviction of possession of narcotics with intent to sell.[11] The defendant argued that these convictions corroborated the defense testimony concerning the victim's criminal history. The state objected to the defendant's request to introduce the victim's convictions solely on the ground that the defendant's proffer was untimely, and the trial court denied the defendant's request for that reason, concluding that the defendant's request was simply "too late."[12]

---

[11] Defense counsel had received a copy of the victim's criminal record several months prior to trial; see footnote 12; and had inadvertently failed to introduce the victim's convictions during the presentation of the defense case. There is no suggestion that defense counsel delayed his tender of the victim's convictions for any strategic or dilatory reason.

[12] The following colloquy took place between the trial court and defense counsel concerning the defendant's request for permission to introduce evidence of the victim's convictions.

"[Defense Counsel]: Your Honor, I would ask—Your Honor, in the disclosure of April 3rd, 1991, there is a document contained therein which appears to be a copy of the computer record of Angel Diaz. Your Honor, I would ask the court to allow the defense to present that item or the court take judicial notice of that item, showing that Angel Diaz, in fact, was convicted of two assaults and a narcotics conviction, 'WITS' is apparently with intent to sell. This would corroborate the testimony of my client who indicated that he had firm knowledge that—that he had heard of the victim

We have recently had occasion to review the responsibilities of trial and reviewing courts with respect to a motion to introduce additional evidence after the moving party has rested. "[T]he reopening of a criminal case either to present omitted evidence or to add further testimony after either of the parties has rested is within the sound discretion of the Trial Court. *State* v. *Brigandi,* 186 Conn. 521, 545, 442 A.2d 927 (1982); see also *State* v. *Zayas,* 195 Conn. 611, 622–23, 490 A.2d 68 (1985) (*Healey, J.,* dissenting); *State* v. *McKnight,* 191 Conn. 564, 580, 469 A.2d 397 (1983); *State* v. *Holmquist,* 173 Conn. 140, 152, 376 A.2d 1111, cert. denied,

---

in this case having been to jail and having a record. There was a cross-examination on that point by Mr. Lacobelle, or there was objection at the time.

"The Court: The parties are at rest, Mr. Schipul.

"[Defense Counsel]: What was that, Your Honor?

"The Court: The parties are at rest. We're not at final argument.

"[Defense Counsel]: I'm asking Your Honor to allow the defendant to enter that item into evidence at this time.

"The Court: Mr. Lacobelle?

"[Assistant State's Attorney]: We're done with the case. If we could just put in evidence after we're at rest from the court file, I guess then the state could put in the fact that he requested to have the bullets examined by his own expert.

"The Court: No, I'll deny that request. I think it's too late.

"[Defense Counsel]: I'll take an exception.

"The Court: May be noted.

"[Defense Counsel]: I think it would serve the end of justice—

"The Court: You got your argument and I've got your exception. I'll deny it."

The state argues that the defendant's proffer failed properly to alert the trial court as to the nexus between the victim's convictions and his alleged violent character. We agree that defense counsel's comments on that issue were not a model of clarity insofar as they tended to emphasize the corroborative nature of the proffered evidence rather than its relevancy to the witness' propensity for violence. We are persuaded, however, upon a careful review of the defendant's testimony concerning the victim's violent character and related criminal record, that defense counsel's argument was sufficient, in the circumstances, to have apprised the trial court of the relevance of the victim's violent criminal history to the defendant's claim of self-defense.

434 U.S. 906, 98 S. Ct. 306, 54 L. Ed. 2d 193 (1977). If the trial court finds that inadvertence or some other compelling circumstance . . . justifies a reopening and no substantial prejudice will occur, it is vested with the discretion to reopen the case. *State* v. *Brigandi,* supra, 546; see also *State* v. *McKnight,* supra; *State* v. *Holmquist,* supra." (Internal quotation marks omitted.) *State* v. *Anderson,* 209 Conn. 622, 634–35, 553 A.2d 589 (1989). In order for the trial court's exclusion of the proffered evidence to constitute a sixth amendment violation, however, "[i]t must be shown . . . that the . . . evidence was of such importance to the achievement of a just result that the need for admitting it overrides the presumption favoring enforcement of the state's usual trial procedures. *State* v. *McKnight,* supra. A greater prejudice must be shown by the omission of the evidence in question than in refusals to receive evidence offered in the regular course of a trial. . . . Id.; *Blaikie* v. *Callahan,* 691 F.2d 64, 67–68 (1st Cir. 1982). If the motion to reopen is denied, we must, in determining whether the trial court has abused its discretion, look to see if an injustice has occurred by the omission of the evidence. *State* v. *McKnight,* supra; *State* v. *Holmquist,* supra. However, every reasonable presumption should be given in favor of the correctness of the court's ruling. . . . *State* v. *Holmquist,* supra; *DiPalma* v. *Wiesen,* 163 Conn. 293, 298, 303 A.2d 709 (1972)." (Internal quotations marks omitted.) *State* v. *Anderson,* supra, 635.

The discretion accorded the trial court in such circumstances, therefore, though necessarily broad, is not unlimited. "The trial judge's discretion, which is a legal discretion, should be exercised in conformity with the spirit of the law and in a manner to subserve and not to impede or defeat the ends of substantial justice." (Internal quotation marks omitted.) *State* v. *McKnight,* supra, 576–77. Consistent with this responsibility, the

trial court may not, in light of all the relevant factors, arbitrarily or unreasonably reject a motion to introduce additional evidence after the moving party has rested.

In order to determine whether the trial court acted reasonably in denying the defendant's request to open his case, we must first determine whether the victim's criminal record would have been admissible had the defendant sought to introduce that evidence during the presentation of his case. If the proffered evidence would have been admissible had it been offered at that time, then we must determine whether the trial court could reasonably have excluded the evidence because it had not been tendered until after the defendant had rested his case.

The "sixth amendment right to compulsory process includes the 'right to offer the testimony of witnesses, and to compel their attendance, if necessary, [and] is in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the jury so that it may decide where the truth lies.' " *State* v. *Genotti,* 220 Conn. 796, 803–804, 601 A.2d 1013 (1992), quoting *Washington* v. *Texas,* 388 U.S. 14, 19, 87 S. Ct. 1920, 18 L. Ed. 2d 1019 (1967).[13] Consistent with the defendant's right fairly to inform the jury of facts material to the defense, "[i]t has long been the law in this state that, in a homicide prosecution, an accused may introduce evidence of the violent, dangerous or turbulent character of the victim to show that the accused had reason to fear serious harm, after laying a proper foundation by adduc-

---

[13] The sixth amendment to the United States constitution provides in part that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have compulsory process for obtaining witnesses in his favor . . . ." This right is applied to state prosecutions through the due process clause of the fourteenth amendment to the United States constitution. *Washington* v. *Texas,* 388 U.S. 14, 18, 87 S. Ct. 1920, 18 L. Ed. 2d 1019 (1967); *State* v. *McKnight,* 191 Conn. 564, 581, 469 A.2d 397 (1983).

ing evidence that he acted in self-defense and that he was aware of the victim's violent character. *State* v. *Miranda,* 176 Conn. 107, 109, 405 A.2d 622 (1978), citing *State* v. *Padula,* 106 Conn. 454, 456–57, 138 A. 456 (1927). More recently, we joined a majority of courts when we expanded this rule to allow the accused to introduce evidence of the victim's violent character to prove that the victim was the aggressor, regardless of whether such character evidence had been communicated to the accused prior to the homicide. *State* v. *Miranda,* supra. In *Miranda,* we determined that the victim's violent character could be proved by reputation testimony, by opinion testimony, or by evidence of the deceased's convictions for crimes of violence, irrespective of whether the accused knew of the deceased's violent character or of the particular evidence adduced at the time of the death-dealing encounter. Id., 114." (Internal quotation marks omitted.) *State* v. *Smith,* 222 Conn. 1, 17–18, 608 A.2d 63, cert. denied, U.S. , 113 S. Ct. 383, 121 L. Ed. 2d 293 (1992). Notwithstanding this general rule of admissibility, we have held that the defendant is not "authorized to introduce any and all convictions of crimes involving violence, no matter how petty, how remote in time, or how dissimilar in their nature to the facts of the alleged aggression. In each case the probative value of the evidence of certain convictions rests in the sound discretion of the trial court." *State* v. *Miranda,* supra.

The defendant contends that the victim's convictions of assault and of possession of narcotics with intent to sell were material to his claim that he shot the victim in response to the victim's initial aggression and with the reasonable belief that the victim intended to kill him or cause him serious physical harm. We agree.

The victim had been convicted of the earlier assault charge less than eighteen months prior to the fatal shooting, and his other two convictions preceded the

shooting by less than three months. The convictions, therefore, were close in time to the deadly encounter between the victim and the defendant. The victim's offenses were sufficiently serious, moreover, to warrant prison terms, including a one year term for the second assault and a seven year period of incarceration, suspended after three years, for the drug trafficking offense.[14] Furthermore, the state objected to the introduction of the victim's convictions not on the grounds that the offenses were too old, too insignificant or not sufficiently related to the defendant's claim of self-defense,[15] but solely because the defendant had

[14] The victim received a sentence of one year imprisonment, suspended, and three years probation, for the earlier of the two assault convictions.

[15] On appeal, the state has not pressed the claim that the defendant's convictions for assault and narcotics trafficking were too remote in time, too petty or too dissimilar in nature to the facts of the victim's alleged aggression toward the defendant. Moreover, in view of the defendant's testimony concerning the repeated assaultive behavior of the victim, the relationship between the victim's violent conduct and his drug trafficking activities, the proximity in time of the victim's assault and drug dealing offenses to the incident in question, the defendant's knowledge of those convictions, and the defendant's fear of the victim stemming from the victim's drug related violence, we are satisfied that all three of the victim's convictions were material to the defense. A homicide victim's recent, sufficiently serious assault conviction generally will be relevant to the defendant's claim of self-defense, subject to a case-by-case determination by the trial court; see, e.g., *State* v. *Mason,* 186 Conn. 574, 581 n.5, 442 A.2d 1335 (1982); *State* v. *Miranda,* 176 Conn. 107, 114–15, 405 A.2d 622 (1978); and there is nothing in the record of this case to suggest that the victim's assault convictions were not material to the victim's violent nature. Although a drug trafficking conviction, without more, is not likely to be probative of a homicide victim's propensity for violence, notwithstanding the "well established correlation between drug dealing and firearms"; *State* v. *Cooper,* 227 Conn. 417, 426 n.5, 630 A.2d 1043 (1993); see also *United States* v. *Rivera,* 844 F.2d 916, 926 (2d Cir. 1988) (weapons are tools of the narcotics trade); *United States* v. *Crespo,* 834 F.2d 267, 271 (2d Cir. 1987) (for narcotics traffickers, possession of firearms is as common as possession of drug paraphernalia); such a conviction may be relevant to the victim's violent character, and therefore to the defendant's claim of self-defense, depending upon the specific facts and circumstances of the case and the conviction. Here, the victim's drug dealing activities were so closely linked to the victim's alleged violent conduct and use of firearms, and to the defend-

not offered the evidence of the victim's convictions until after he had rested his case. Finally, the trial court did not exclude the victim's convictions for lack of probative value; the sole basis for the court's ruling was the defendant's failure to have presented the evidence during his case. In these circumstances, we conclude that evidence of the victim's convictions was material to the defendant's claim of self-defense and, therefore, that the convictions would have been admissible had they been offered during the presentation of the defense.

We next turn to whether the trial court acted within its broad discretion in rejecting the defendant's request for permission to introduce the victim's criminal record after the defendant had rested his case. In so doing, we are obligated to consider the specific circumstances of the defendant's request, including the state's interest in an orderly trial process, the potential for jurors to have placed undue emphasis on the evidence had it been admitted, and the nature of the evidence. See *State* v. *McKnight,* supra, 581. We conclude that the trial court's denial of the defendant's request was unreasonable and, therefore, an abuse of its discretion.

The defendant, who had rested his case shortly before the luncheon recess, sought permission to introduce the victim's criminal record immediately after the recess and prior to the jury having been summoned back into the courtroom for counsels' closing arguments. Therefore, the only proceedings to have taken place during the short interval between the conclusion of the defendant's case and his request to introduce the victim's convictions had been the brief rebuttal testimony of Detective Joseph Sherbo. In addition, the accuracy of the victim's criminal record was not contested by the

ant's alleged fear of the victim, that the victim's recent conviction for possession of narcotics with intent to sell had a direct bearing on the defendant's claim that the victim was a violent drug dealer whom the defendant had shot and killed in self-defense.

state, which had made that record available to the defendant. In view of the timing of the defendant's motion and the undisputed accuracy of the proffered evidence, the introduction of the victim's convictions, by way of stipulation or otherwise, would not have caused any delay or undue interruption of the trial proceedings. Likewise, the admission of the proffered evidence so soon after the defendant rested his case, and before the commencement of any other proceedings before the jury, would not have subjected the state to any risk that the jury might have placed unfair emphasis upon the evidence. Admission of the victim's convictions, therefore, would not have disrupted the orderly trial process or prejudiced the state.

Furthermore, the evidence of the victim's criminal record was central to the only contested issue in this case: whether the defendant's shooting of the victim had been justified on the grounds of self-defense. The proffered evidence was especially critical because the defendant was the only eyewitness to the fatal altercation, and evidence of the victim's convictions would have provided objective corroboration of the defendant's claim that the victim was a person of violent character who had acted as the initial aggressor. In these circumstances, we can ascertain no valid reason why the trial court denied the defendant's motion to introduce the victim's convictions.

A trial court is vested with the discretion to allow a party to open its case after that party has rested in order to preserve the fundamental integrity of the trial's truth-finding function. Therefore, unyielding adherence to considerations of procedure, without regard to other factors bearing upon the moving party's request to open its case, is not consistent with the responsibility of the trial court to exercise its discretion in a manner that enhances the likelihood of a fair and informed verdict. Although we recognize that the

right of a defendant to present a defense is subject to appropriate supervision by the trial court in accordance with established rules of procedure and evidence; see, e.g., *Taylor* v. *Illinois,* 484 U.S. 400, 410–11, 108 S. Ct. 646, 98 L. Ed. 2d 798 (1988) (trial court may exclude testimony of alibi witness as sanction for defense counsel's violation of local discovery rules); *State* v. *McKnight,* supra (testimony of additional alibi witness may be excluded where jury had already begun deliberations); *State* v. *Mason,* 186 Conn. 574, 581, 442 A.2d 1335 (1982) (trial court may exclude evidence relating to homicide victim's violent character where such evidence is merely cumulative); we are also mindful that the fair opportunity to establish a defense "is a fundamental element of due process of law"; *Washington* v. *Texas,* supra, 19; and that our rules should not be applied mechanistically so as to restrict unreasonably that important right. See *Chambers* v. *Mississippi,* 410 U.S. 284, 302, 93 S. Ct. 1038, 35 L. Ed. 2d 297 (1973); *State* v. *Kelly,* 208 Conn. 365, 376, 545 A.2d 1048 (1988). The trial court's exclusion of the evidence proffered by the defendant, solely because that evidence had been tendered just after, rather than just before, the brief luncheon recess, significantly impaired the defendant's ability to present his defense to the jury, and furthered no legitimate interest of the court or of the state. We conclude, therefore, that the trial court's denial of the defendant's request to open his case to allow the introduction of the victim's criminal record constituted an abuse of discretion.

We must now determine whether the improper exclusion of the victim's criminal record entitles the defendant to a new trial. In the circumstances of this case, evidence of the victim's convictions was of such importance to the defendant's claim of self-defense that its exclusion deprived the defendant of his sixth amendment right fairly to present to the jury his version of

the facts. Because the trial court's rejection of the defendant's motion implicated the defendant's constitutional right to present a defense, the burden falls on the state to demonstrate that the error was harmless beyond a reasonable doubt. See *State* v. *Colton,* 227 Conn. 231, 253–54, 630 A.2d 577 (1993); *State* v. *Santiago,* 224 Conn. 325, 332–33, 618 A.2d 32 (1992); *State* v. *Truppi,* 182 Conn. 449, 465, 438 A.2d 712 (1980), cert. denied, 451 U.S. 941, 101 S. Ct. 2024, 68 L. Ed. 2d 329 (1981). "If the evidence may have had a tendency to influence the judgment of the jury, it cannot be considered harmless." *State* v. *Colton,* supra, 254; see also *State* v. *Miranda,* supra, 115.

As we have discussed, admission of the victim's convictions would have tended to corroborate the defendant's testimony that the victim was a violent person who had shot and wounded the defendant in the past and who had acted as the initial aggressor when he encountered the defendant at Lugo's Market. In addition, because the defendant was the only eyewitness to the fatal shooting, his credibility on the issue of the victim's aggressive behavior was critical to his claim of self-defense, the only contested issue in the case. Because evidence of the victim's criminal record would have been "highly relevant in helping the jury to determine whether the victim had a violent disposition and whether the defendant's story of self-defense [was] truthful"; *State* v. *Miranda,* supra, 113–14; that evidence might well have influenced the jury's decision.

Moreover, the harm to the defendant's claim of self-defense resulting from the exclusion of the victim's criminal record was compounded when the assistant state's attorney, in his rebuttal to the defendant's closing argument, commented: "Ladies and Gentlemen, in rebuttal, let me say this. You heard what a bad person Mr. Angel Diaz was. We weren't here to try that. That's not what the state had to either prove or disprove. The

elements of the crime charged are what the state had to prove. In fact, [there] wasn't even a whole lot of cross-examination on that *because the only people that said he was a bad person was the defendant and his mother.*" (Emphasis added.) The state, therefore, taking advantage of the trial court's exclusion of the victim's convictions, highlighted the fact that the jury had before it no independent or objective evidence of the victim's violent character.

In these circumstances, we cannot conclude that the exclusion of the victim's criminal record was harmless beyond a reasonable doubt. The defendant, therefore, is entitled to a new trial, and we remand the case to the trial court for that purpose.

## II

Although our resolution of the first issue is dispositive of this appeal, we address two other issues raised by the defendant that are likely to arise at a new trial. The defendant contends that (1) the trial court abused its discretion by excluding evidence of the criminal convictions of a state's witness, thereby improperly limiting the defendant's right to cross-examine that witness, and (2) the trial court's instructions to the jury on intent and motive were improper. We disagree with both of these claims.

## A

The defendant contends that he should have been allowed to impeach the state's witness, the shopkeeper, Salvador Lugo, with two of Lugo's prior convictions,[16] and that the trial court's exclusion of those convictions improperly abridged the defendant's rights under the confrontation clause of the sixth amendment to the

---

[16] The trial court also prohibited the defendant from impeaching Lugo with a 1962 conviction of seduction of a minor female. The defendant has not challenged that ruling.

United States constitution.[17] The trial court ruled that the witness' 1979 convictions of manslaughter in the first degree and of carrying a pistol without a permit[18] were too remote in time and, in addition, that those offenses did not bear directly upon the witness' veracity.

"The credibility of a witness may be attacked by introducing the witness' conviction of a crime if the maximum penalty for that conviction is imprisonment exceeding one year. See General Statutes § 52-145 (b); *State* v. *Braswell,* 194 Conn. 297, 307, 481 A.2d 413 (1984), cert. denied, 469 U.S. 1112, 105 S. Ct. 793, 83 L. Ed. 2d 786 (1985)." *State* v. *Sauris,* 227 Conn. 389, 409, 631 A.2d 238 (1993). "Three factors have usually been identified as of primary importance in considering whether a former criminal conviction is to be admitted: (1) the extent of the prejudice likely to arise; (2) the significance of the commission of the particular crime in indicating untruthfulness; and (3) its remoteness in time." *State* v. *Nardini,* 187 Conn. 513, 522, 447 A.2d 396 (1982). We will not disturb the trial court's determination as to the admissibility of a prior conviction

---

[17] The pertinent provision of the sixth amendment to the United States constitution, applicable to the states through the due process clause of the fourteenth amendment to the federal constitution, provides: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . ." See *Pointer* v. *Texas,* 380 U.S. 400, 403, 85 S. Ct. 1065, 13 L. Ed. 2d 923 (1965); *State* v. *Oehman,* 212 Conn. 325, 329 n.3, 562 A.2d 493 (1989).

The defendant also alleges a violation of his rights under article first, § 8, of the Connecticut constitution. He has not, however, provided any independent analysis of this claim. We therefore consider only the the defendant's federal constitutional claim. See footnote 6.

[18] The record indicates that the witness entered guilty pleas to each of the two charges on December 6, 1979, and that he was sentenced for both offenses on January 16, 1980. The witness received a sentence of three to seven years imprisonment, execution suspended, and two years probation, for the manslaughter conviction, and a term of imprisonment of one year and a $1000 fine for the weapons offense.

to impeach a witness absent an abuse of discretion. *State* v. *Braswell,* supra; *State* v. *Nardini,* supra, 521–22.

We are satisfied that the trial court acted within its discretion in precluding the introduction of the witness' two convictions for impeachment purposes. Although we have left to the trial court the responsibility for determining whether, in a particular case, a witness' criminal conviction may be excluded on the grounds that it is too old, "we have sanctioned a general guideline for the determination of remoteness that parallels rule 609 (b) of the Federal Rules of Evidence. Rule 609 (b) establishes a ten year limitation from conviction or release from resulting confinement upon the use of the conviction for impeachment purposes unless the probative value of the conviction substantially outweighs its prejudicial effect."[19] *State* v. *Sauris,* supra, 409–10; *State* v. *Nardini,* supra, 522. Here, the witness' two convictions fell outside that general ten year guideline. Although "convictions having some special significance upon the issue of veracity may surmount the standard ten year bar"; *State* v. *Sauris,* supra, 410; *State* v. *Nardini,* supra, 525–26; there is no claim that the crimes of manslaughter or carrying a pistol without a permit bear any such special relationship to credibility.[20] The trial court, therefore, did not abuse its

---

[19] Rule 609 (b) of the Federal Rules of Evidence provides in pertinent part: "Evidence of a conviction under this rule is not admissible if a period of more than ten years has elapsed since the date of the conviction or of the release of the witness from the confinement imposed for that conviction, whichever is the later date, unless the court determines, in the interests of justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect."

We have noted that "this federal standard is not our own, but rather serves 'as a rough bench mark in deciding whether trial court discretion has been abused . . . .' *State* v. *Nardini,* 187 Conn. 513, 526, 447 A.2d 396 (1982)." *State* v. *Sauris,* 227 Conn. 389, 409 n.14, 631 A.2d 238 (1993).

[20] Unlike convictions for crimes involving fraud or dishonesty, crimes of violence generally have no direct bearing upon a witness' truthfulness; *State*

discretion in excluding the witness' two convictions for impeachment purposes.[21] Because the defendant was not entitled to use those convictions to impeach the witness, the defendant's claim under the confrontation clause of the sixth amendment to the federal constitution must also fail.[22] See *State* v. *Sauris,* supra, 413; *State* v. *Moye,* 214 Conn. 89, 95, 570 A.2d 209 (1990).

## B

Finally, the defendant asserts that the trial court's charge on motive and intent was improper because it placed undue emphasis on the fact that evidence of motive may be strong evidence of guilt, and thereby diminished the state's burden of proof on the element of intent. We are unpersuaded. The trial court's well balanced jury instructions repeatedly stressed the state's burden of proving the defendant's intent beyond a reasonable doubt, and the court fully explained and carefully distinguished the concepts of intent and motive. Although the trial court charged the jury that the existence of a motive may be evidence of guilt, the court also informed the jury that it might reasonably consider the absence of a motive in determining whether the state had proven the defendant's guilt

v. *Pinnock,* 220 Conn. 765, 782, 601 A.2d 521 (1992); *State* v. *Carter,* 189 Conn. 631, 644, 458 A.2d 379 (1983); and neither the crime of manslaughter; *State* v. *Wright,* 198 Conn. 273, 278, 502 A.2d 911 (1986); nor that of carrying a pistol without a permit; *State* v. *Nardini,* 187 Conn. 513, 526–30, 447 A.2d 396 (1982); has any such special or direct relevancy to credibility.

[21] Although the danger of unfair prejudice posed by the use of a conviction to impeach a criminal defendant is considerably greater than the risk of undue prejudice resulting from the use of such a conviction against a witness other than the defendant; *State* v. *Binet,* 192 Conn. 618, 623, 473 A.2d 1200 (1984); "the trial court always has the responsibility to consider the potential prejudice stemming from the impeachment of any witness with evidence of conviction of a crime . . . ." *State* v. *Cooper,* 227 Conn. 417, 435, 630 A.2d 1043 (1993); *State* v. *Pinnock,* 220 Conn. 765, 782, 601 A.2d 521 (1992).

[22] We note that the defendant was otherwise allowed wide latitude in his cross-examination of the witness.

beyond a reasonable doubt. In the context of the overall charge, therefore; see *State* v. *Cooper,* 227 Conn. 417, 444, 630 A.2d 1043 (1993); *State* v. *Crafts,* 226 Conn. 237, 249, 627 A.2d 877 (1993); the trial court's instructions on intent and motive provided the jury with appropriate guidance on those issues, and did not dilute the state's burden on the element of intent.

The judgment is reversed and the case is remanded for a new trial.

In this opinion the other justices concurred.