STATE OF CONNECTICUT *v.* WILLIE ASKEW
(14771)

Heiman, Spear and Hennessy, Js.

Argued December 9, 1996—officially released February 18, 1997

*Sheila A. Huddleston*, special public defender, for the appellant (defendant).

*Ronald G. Weller*, assistant state's attorney, with whom, on the brief, were *James E. Thomas*, state's attorney, and *Rosita M. Creamer*, assistant state's attorney, for the appellee (state).

HENNESSY, J. The defendant, Willie Askew, appeals from the judgment of conviction, rendered after a jury trial, of robbery in the first degree in violation of General Statutes § 53a-134 (a) (4). On appeal, the defendant claims that the trial court improperly (1) denied his motion to suppress the victim's out-of-court and in-court identifications, (2) excluded impeachment evidence regarding the key witness' prior felony conviction, (3) refused to give a *Simmons-Telfaire* instruction to the jury and (4) deprived him of a fair trial by its cumulative actions.

The jury could reasonably have found the following facts. On February 28, 1994, Patsy Cobbs, while purchasing food in a pizza shop located on the corner of

Bulkeley Avenue and Park Street in Hartford, noticed the defendant looking at her through the window of the shop. While walking home, she was approached by the defendant, who then pulled a handgun from his pocket, pointed it at her head and demanded money. The victim gave the defendant a pouch in which she kept her money, and the defendant grabbed her food and fled.

Officer John Inho was dispatched to the scene, and the victim described her assailant to Inho as a tall, slim black male in his late twenties or early thirties, wearing a black Starter jacket with lettering across the back that may have been the Raiders or Lakers logo and wearing black jeans and a black wool cap. Inho searched the area with the victim in his patrol car but failed to find the suspect. The officer drove the victim home.

On that same evening, Nelson Bogan, the victim's boyfriend, and Joaquin Marvin, while walking on Capitol Avenue, noticed a slim black male wearing a black jacket with a label on the back and a sweater cap running very fast toward them and into an apartment building at 1052 Capitol Avenue. A short time later, Yvonne Brown approached Bogan and Marvin and offered to sell the two men a stereo. Brown, Bogan and Marvin went to Brown's apartment located at 1052 Capitol Avenue. Bogan and Marvin noticed that the man they had seen earlier running toward them on Capitol Avenue was present in the apartment. While walking home after deciding not to purchase the stereo, Bogan and Marvin met Kimberly Mobley, a neighbor of the victim and a witness to the robbery from her third floor apartment window, and Erica Cobbs, the victim's daughter, who informed them of the robbery. Bogan went to his girlfriend's apartment and, after hearing her describe the robber, realized that her description matched the appearance of the person he saw running on Capitol

Avenue. Bogan and Marvin began to search for the robber and found him with Brown on Park Street. The robber ran away when they approached.

Bogan and Marvin went to Capitol Avenue where they stopped Inho to tell him that they were chasing the robber. They were soon joined by the defendant and Officer Antoni Kozieradzki, who was investigating the defendant's complaint that two men were chasing him. Inho and Kozieradzki drove the defendant to the victim's apartment. When they arrived, Bogan went to the victim's apartment and brought her to the police car. The victim identified the defendant as the person who had robbed her.

## I

The defendant first claims that the trial court improperly denied his motion to suppress the out-of-court identification as unnecessarily suggestive and unreliable. The defendant argues that the use of a one-to-one confrontation instead of a photograph array to determine if the victim could identify the suspect as the person who had robbed her created an unnecessary risk of misidentification. Furthermore, the defendant objects to the trial court's reliance on the victim's testimony concerning her opportunity to view her assailant because the testimony contained statements that were contradictory, uncertain and inconsistent, rendering the identification of the defendant as the robber unreliable. The trial court denied the defendant's motion to suppress the victim's identification of him as the assailant on the grounds that the identification was reliable and the exigencies of the circumstances warranted the use of the one-to-one identification procedure.

"A defendant who moves to suppress identification evidence bears the initial burden of proving that the identification resulted from an unconstitutional procedure." (Internal quotation marks omitted.) *State* v. *Hin-*

*ton*, 196 Conn. 289, 293, 493 A.2d 836 (1985). To succeed on the motion to suppress, "the defendant must prove (1) that the identification procedures were unnecessarily suggestive, and (2) that the resulting identification was not reliable in the totality of the circumstances." *State* v. *Perez*, 198 Conn. 68, 73, 502 A.2d 368 (1985); *State* v. *Parker*, 197 Conn. 595, 598, 500 A.2d 551 (1985); *State* v. *Hinton*, supra, 292–93.

"We recognize that almost any one-to-one confrontation between a victim of a crime and a person whom the police present as a suspect is presumptively 'suggestive,' but not all suggestive confrontations are unnecessary." *State* v. *Aversa*, 197 Conn. 685, 694, 501 A.2d 370 (1985). An immediate viewing of the suspect may be justified where "it [is] important for the police to separate the prime suspect gold from the suspicious glitter, so as to enable them . . . to continue their investigation with a minimum of delay." *State* v. *Maturo*, 188 Conn. 591, 596, 452 A.2d 642 (1982). "Circumstances may also justify an immediate viewing because prompt on-the-scene confrontations are generally more reliable and allow an innocent party to be released quickly if no positive identification is made." *State* v. *Collette*, 199 Conn. 308, 311, 507 A.2d 99 (1986).

In the present case, the confrontation between the defendant and the victim, under the totality of circumstances, resulted in an identification that was reliable. "The constitutional test for reliability requires the trial court to consider 'the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation. Against these factors is to be weighed the corrupting effect of the suggestive identification itself.' *Manson* v. *Brathwaite*, 432 U.S. 98, 114, 97 S. Ct. 2243, 53 L. Ed. 2d 140 (1977); *State* v. *Theriault*,

[182 Conn. 366, 373–74, 438 A.2d 432 (1980)]." *State* v. *Hinton,* supra, 196 Conn. 295–96. The victim saw her assailant through the window of the pizza shop and again came face-to-face with him when he confronted her outside. The assailant commanded the victim's full attention when he pointed a gun at her head and demanded her money and food. The victim's description of her assailant was detailed and her identification of the defendant as her assailant at the one-to-one confrontation was certain and took place approximately one and one-half hours after the robbery. Under all the circumstances, the victim's identification of the defendant as the robber was reliable.

The defendant further claims that the trial court improperly found that the exigencies of the situation justified the one-to-one confrontation. "The factors to be considered in determining exigency include whether the defendant is or is not in custody, whether the victim will be available to make an identification when alternative procedures can be arranged, and whether there is any other particular need for the police to determine quickly whether they [are] on the wrong trail." (Internal quotation marks omitted.) *State* v. *Anderson,* 6 Conn. App. 15, 21, 502 A.2d 446 (1986).

Here, the defendant was not in custody and, until the confrontation with the victim, the police lacked probable cause to arrest him. Furthermore, the circumstances were unusual in that Bogan and Marvin claimed that the defendant fit the description of the robber and was seen running in the area shortly after the robbery. Also, the defendant had enlisted the police to protect him from two men who were chasing him. To ascertain the possible culpability of the defendant and to determine quickly if they were on the wrong trail, the police were justified in using the one-to-one identification procedure.

The defendant's claim that the in-court identification of the defendant by the victim was tainted by an improper out-of-court identification is without merit. "Generally, an in-court testimonial identification need be excluded, as violative of due process, only when it is tainted by an out-of-court identification procedure which is unnecessarily suggestive and conducive to irreparable misidentification." *State* v. *Smith*, 200 Conn. 465, 469, 512 A.2d 189 (1986). Because we find that the out-of-court identification was reliable and not the result of an improper procedure, this claim must fail.

## II

The defendant next claims that the trial court improperly excluded evidence that the victim had previously been convicted of a felony larceny.

"The credibility of a witness may be attacked by introducing the witness' conviction of a crime if the maximum penalty for that conviction is imprisonment exceeding one year. See General Statutes § 52-145 (b); *State* v. *Braswell*, 194 Conn. 297, 307, 481 A.2d 413 (1984), cert. denied, 469 U.S. 1112, 105 S. Ct. 793, 83 L. Ed. 2d 786 (1985). *State* v. *Sauris*, 227 Conn. 389, 409, 631 A.2d 238 (1993). Three factors have usually been identified as of primary importance in considering whether a former criminal conviction is to be admitted: (1) the extent of the prejudice likely to arise; (2) the significance of the commission of the particular crime in indicating untruthfulness; and (3) its remoteness in time. *State* v. *Nardini*, 187 Conn. 513, 522, 447 A.2d 396 (1982). We will not disturb the trial court's determination as to the admissibility of a prior conviction to impeach a witness absent an abuse of discretion. *State* v. *Braswell*, supra [307]; *State* v. *Nardini*, supra, 521–22." (Internal quotation marks omitted.) *State* v. *Carter*, 228 Conn. 412, 430–31, 636 A.2d 821 (1994).

The court excluded the evidence because it found that the victim's felony conviction in July, 1984, occurred more than ten years ago and, therefore, was too remote in time. In *State* v. *Roman*, 6 Conn. App. 189, 192, 504 A.2d 529 (1986), we stated, "It is a rare prior conviction which is more than ten years old which retains the minimal probative value sufficient to overcome its prejudice." The trial court properly exercised its discretion in excluding the evidence.[1]

## III

In the defendant's third claim on appeal, he maintains that the trial court improperly refused to give a *Simmons-Telfaire* instruction to the jury and instead gave an instruction that was inaccurate and inappropriate.

A *Simmons* instruction includes a caution to the jury concerning police use of an improper identification procedure. *Simmons* v. *United States*, 390 U.S. 377, 88 S. Ct. 967, 19 L. Ed. 2d 1247 (1968); *State* v. *Anderson*, 20 Conn. App. 271, 281, 566 A.2d 436 (1989), cert. denied, 213 Conn. 813, 569 A.2d 549 (1990). A *Telfaire* instruction "tells the jury to consider in appraising the identification testimony of a witness the adequacy of his opportunity and his capacity to observe the offender; the length of time available for the witness to observe the offender; the proximity of the witness to the offender; whether the witness had seen or known this person in the past; whether the identification was a

---

[1] The trial court measured the ten year period from the date of the victim's conviction to the date she identified the defendant at trial. The defendant argues that the trial court should have measured the ten year period from the date of the victim's conviction to the date she identified the defendant *on the night of the robbery.* The victim's identification of the defendant on the night of the crime, February 28, 1994, was within ten years of her conviction. The defendant's proposed method of calculating the ten year period, however, is not supported by Connecticut case law. See *State* v. *Sauris*, supra, 227 Conn. 410; *State* v. *Roman*, supra, 6 Conn. App. 691. The trial court correctly determined that the conviction occurred more than ten years ago.

product of the witness' own recollection; and the credibility of the witness. *United States* v. *Telfaire*, 469 F.2d 552 (D.C. Cir. 1972)." *State* v. *Davis*, 198 Conn. 680, 685, 504 A.2d 1372 (1986).

The court instructed the jury as to those factors that should be considered concerning the reliability of identification testimony as follows: "First, her opportunity to observe the person. Now, that's basically how close, the amount of time, the lighting conditions, the degree of attention, and the degree of stress. Two, you should consider her verbal description of the defendant, as to any consistencies or inconsistencies, having now the opportunity of viewing the defendant in the courtroom. Three, the time which passed between the incident and such identification. As I recall it, Officer Inho indicated from his report that he was dispatched to George's Pizza at 10:01 and that he made the arrest of the defendant after the identification at 11:55. And, fourth, any incidence of suggestion which might occur before the identification was made. Five, the certainty with which the identification was made here . . . . You likewise may consider any evidence which corroborates or contradicts such identification."

"[W]e note that there is no constitutional right to an instruction on the fallibility of eyewitness identifications. . . . Although such an instruction may be given in an appropriate case . . . it is not reversible error for a trial court to refuse to give a *Telfaire* instruction where the conviction of the defendant did not turn upon the testimony of eyewitnesses who were uncertain, unclear or inconsistent. . . . The ultimate test of a court's instructions is whether, taken as a whole, they fairly and adequately present the case to a jury in such a way that injustice is not done to either party under the established rules of law." (Citations omitted; internal quotation marks omitted.) *State* v. *Anderson*, supra, 20 Conn. App. 281–82.

We cannot conclude that the victim, the eyewitness, was uncertain, unclear or hesitant in her identification of the defendant. In addition, the trial court's instructions to the jurors as to the factors they should consider in determining the reliability of the identification testimony were comprehensive enough to give adequate guidance to them. The trial court's instruction adequately covered the dangers of misidentification. Furthermore, the court is not required to charge the jury in language identical to that in the defendant's request. See *State* v. *Harrell*, 199 Conn. 255, 269, 506 A.2d 1041 (1986); *State* v. *Anderson*, supra, 20 Conn. App. 282. Because the trial court properly found that there was no unnecessary suggestiveness in the identification procedure, the defendant's claim that the court improperly failed to give the requested charge based on *Simmons* is also without merit. *State* v. *Anderson*, supra, 283.

The defendant additionally claims that the court gave an improper charge in response to a question asked by the jury concerning the identification procedure.

The following additional facts are necessary for the resolution of this claim. The jury interrupted its deliberations to request that the trial court to "explain the concept of reasonable doubt as it may pertain in this case. And the identification process, there was no lineup. Can you comment on how, legally, this affects the validity of the identification process?" The trial court gave the following instruction: "There is presently no procedure available to a police officer to detain a suspect even though he may fit the description given to him by the victim for a sufficient amount of time to arrange a lineup. So where, as here, the circumstances are exigent, that is, the crime has just been committed and the police are in fresh investigation as to the perpetrator, the law finds that it is necessary for the police to make a face-to-face confrontation with the victim, even though it is presumptively suggestive. So that if

the victim states that such a person is not the perpetrator, such innocent person may be immediately released and the police investigation immediately continued. On the other hand, it would be very unfair to deprive the victim from making an immediate identification when the victim's memory is fresh. So, to answer your question directly, the absence of a lineup in this case does not make the identification process illegal or invalid, provided you follow my instructions as to the factors to consider." The trial court then repeated its earlier instruction as to the factors to be considered when evaluating the reliability of identification testimony.

The defendant took an exception to the trial court's response and again asserted that the court should have included language from his requested *Simmons-Telfaire* instruction. He also argued: "We contend that merely telling the jury that situations where there are no lineups, where there are one-on-one identifications, are legal, although correct in the law, is an inadequate response to this jury's question. We contend that what they were also looking for is how this type of identification should be scrutinized or treated in comparison to any other forms or types of identifications. And in the language that I had suggested earlier and that I suggested when I just read it into the record, I feel it would have been an appropriate response for the court to make."

We find no merit to the defendant's preserved challenge to the court's response. The trial court's answer adequately addressed the jury's inquiry into the validity of the one-to-one identification procedure. Furthermore, the court addressed the defendant's requested *Simmons-Telfaire* language by repeating its earlier instruction on the reliability of identification testimony. The court's answer was both legally adequate and responsive to the jury's question.

The defendant next raises several unpreserved challenges to the identification testimony charge and a supplemental charge given in response to the jury's question. He argues that the identification testimony charge was improper in three respects. First, he maintains that by instructing the jury that it should consider the victim's prior description of the "defendant," instead of using a less accusatory word, the court conclusively identified the defendant as the person whom the victim had described. Second, the defendant claims that the court unduly emphasized the testimony of Inho and thereby suggested that the length of time between the robbery and the identification was especially significant. Third, he claims that the trial court did not explain what "incidence of suggestion" might mean as used in its instruction to the jury.

The defendant maintains that the trial court's response to the jury's question was incorrect and prejudicial. He first claims that the court's statement that "[t]here is no procedure available to detain a suspect even though he may fit the description given to him by the victim for a sufficient amount of time to arrange a lineup" is incorrect because the police could have asked the suspect to consent to a lineup or to accompany them to the police station for further investigation. Second, the defendant claims that the court's statement, "where, as here, the circumstances are exigent . . . the law finds that it is necessary for the police to make a face-to-face confrontation with a victim, even though it is presumptively suggestive," was incorrect and improper because by stating that the one-to-one confrontation was necessary, the court effectively suggested to the jury that it had formed an opinion as to the defendant's guilt. Third, he claims that the court's statement that the police use face-to-face confrontations so that an "innocent person may immediately be released" suggests to the jury that the defendant, who

had not been released, could not be innocent. Fourth, the defendant argues that the statement that it would be "very unfair to deprive the victim from making an immediate identification when the victim's memory was fresh" was prejudicial to the defendant.

The defendant failed to raise these specific challenges to the court's identification testimony instruction and its response to the jury's question at trial. The defendant has also failed to request review of these unpreserved claims under *State* v. *Golding*, 213 Conn. 233, 567 A.2d 823 (1989).[2]

Our Supreme Court has consistently held that we are not bound to review on appeal unpreserved, non-constitutional claims. See, e.g., *State* v. *Kulmac*, 230 Conn. 43, 74, 644 A.2d 887 (1994); *State* v. *Hammond*, 221 Conn. 264, 289, 604 A.2d 793 (1992); *State* v. *Golding*, supra, 213 Conn. 239–40; *State* v. *Smith*, 209 Conn. 423, 426, 551 A.2d 742 (1988); *State* v. *Bailey*, 209 Conn. 322, 338, 551 A.2d 1206 (1988). "The policies behind the requirement that claims be made at trial in order to be reviewed on appeal are both ancient and sound . . . and have been often stated. It is rare that a claim which the defendant did not think important enough to raise at trial will require reversal of his conviction. Requiring such claims to be made at trial permits their correction before it is too late. It avoids needless multiple proceedings which are neither in the defendant's nor the public's interest, and which contribute to the economic waste of court congestion." (Citation omitted; internal quotation

---

[2] Under *Golding*, a defendant can prevail on an unpreserved claim of constitutional error "only if all of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." *State* v. *Golding*, supra, 213 Conn. 239–40.

marks omitted.) *State* v. *Cosby*, 6 Conn. App. 164, 173, 504 A.2d 1071 (1986).

The defendant has not requested that we review his unpreserved claims under *Golding.* "In the absence of such a request, we have, in the past, declined to review a defendant's claim under similar circumstances." *State* v. *Rogers*, 38 Conn. App. 777, 787, 664 A.2d 291, cert. denied, 235 Conn. 918, 665 A.2d 610 (1995); see *State* v. *Teel*, 42 Conn. App. 500, 504, 681 A.2d 974, cert. denied, 239 Conn. 921, 682 A.2d 1012 (1996); *State* v. *Casado*, 42 Conn. App. 371, 374–75, 680 A.2d 981, cert. denied, 239 Conn. 920, 682 A.2d 1006 (1996); *State* v. *Hermann*, 38 Conn. App. 56, 65, 658 A.2d 148, cert. denied, 235 Conn. 903, 665 A.2d 904 (1995); *State* v. *Jones*, 34 Conn. App. 807, 815–16, 644 A.2d 355, cert. denied, 231 Conn. 909, 648 A.2d 158 (1994). We decline, therefore, to grant review of the defendant's claims under *Golding.*[3] We further decline to review the claim under the plain error doctrine because we do not find that the instructions as given affected the fairness or integrity of the proceedings or resulted in manifest injustice to the defendant. See *Westport Taxi Service, Inc.* v. *Westport Transit District*, 235 Conn. 1, 25, 664 A.2d 719 (1995).[4]

## IV

The defendant's final claim is that the cumulative effect of the trial court's actions denied the defendant

[3] In *State* v. *Roy*, 34 Conn. App. 751, 764–66, 643 A.2d 289 (1994), we declined review of the defendant's unpreserved sufficiency of the evidence claim under *Golding* because he failed to invoke *Golding* review. Our Supreme Court reversed our decision but limited its decision to "the circumstances of this case." *State* v. *Roy*, 233 Conn. 211, 212, 658 A.2d 566 (1995).

The present case is clearly distinguishable. In *Roy*, the defendant's claim was a sufficiency of the evidence claim that the Supreme Court noted was " 'an essential of the due process guaranteed by the Fourteenth Amendment . . . .' " Id. Here, the defendant's unpreserved jury instruction challenges do not rise to that level of constitutional magnitude.

[4] The defendant argues that the claims merit review because the unpreserved issues are "so interwoven with the properly preserved issue of the

a fair trial in violation of his right to due process under the United States constitution and the Connecticut constitution. Our Supreme Court has rejected a claim that the cumulative effect of a variety of alleged improprieties should be the basis of a claim of constitutional violation. *State* v. *Robinson*, 227 Conn. 711, 747, 631 A.2d 288 (1993). As in *State* v. *Reddick*, 33 Conn. App. 311, 339, 635 A.2d 848 (1993), cert. denied, 228 Conn. 924, 638 A.2d 38 (1994), we also reject as untenable the creation of "a new constitutional claim in which the totality of alleged constitutional error is greater than the sum of its parts." (Internal quotation marks omitted.)

The judgment is affirmed.

In this opinion the other judges concurred.

requested instruction." We are not so persuaded. The unpreserved claims are distinct from the preserved ones and may be separately reviewed.