STATE OF CONNECTICUT *v.* WILLIE ASKEW
(SC 15674)

Borden, Berdon, Katz, Palmer and McDonald, Js.

Argued January 20—officially released July 14, 1998

*Sheila A. Huddleston*, special public defender, with whom was *James W. Bergenn*, special public defender, for the appellant (defendant).

*Ronald G. Weller*, assistant state's attorney, with whom, on the brief, were *James E. Thomas*, state's attorney, and *Rosita M. Creamer*, assistant state's attorney, for the appellee (state).

*Opinion*

PALMER, J. The defendant, Willie Askew, was convicted after a jury trial of robbery in the first degree in violation of General Statutes § 53a-134 (a) (4).[1] The trial

---

[1] General Statutes § 53a-134 (a) provides in relevant part: "A person is guilty of robbery in the first degree when, in the course of the commission

court rendered judgment in accordance with the jury verdict, and the defendant appealed from the judgment of conviction to the Appellate Court, which affirmed the trial court's judgment. *State* v. *Askew*, 44 Conn. App. 280, 294, 688 A.2d 1346 (1997). We granted the defendant's petition for certification to appeal on the following issue: "Under the circumstances of this case, did the trial court prejudice the defendant by improperly excluding from evidence the victim's prior felony larceny conviction while allowing into evidence the defendant's prior conviction?" *State* v. *Askew*, 240 Conn. 928, 693 A.2d 300 (1997). We conclude that the trial court abused its discretion in excluding the victim's prior conviction and, consequently, we reverse the judgment of the Appellate Court.[2]

---

of the crime of robbery as defined in section 53a-133 or of immediate flight therefrom, he or another participant in the crime . . . (4) displays or threatens the use of what he represents by his words or conduct to be a pistol, revolver, rifle, shotgun, machine gun or other firearm . . . ."

General Statutes § 53a-133 defines robbery as follows: "A person commits robbery when, in the course of committing a larceny, he uses or threatens the immediate use of physical force upon another person for the purpose of: (1) Preventing or overcoming resistance to the taking of the property or to the retention thereof immediately after the taking; or (2) compelling the owner of such property or another person to deliver up the property or to engage in other conduct which aids in the commission of the larceny."

[2] We also granted the defendant's petition for certification to appeal on a second issue, namely: "Under the circumstances of this case, did the trial court improperly deny the defendant's request for a *Telfaire* instruction?" *State* v. *Askew*, supra, 240 Conn. 928. Because we conclude that the defendant is entitled to a new trial due to the trial court's exclusion of the victim's prior felony conviction, we need not decide whether the court improperly failed to give an instruction, under *United States* v. *Telfaire*, 469 F.2d 552 (D.C. Cir. 1972), "tell[ing] the jury to consider in appraising the identification testimony of a witness the adequacy of his opportunity and his capacity to observe the offender; the length of time available for the witness to observe the offender; the proximity of the witness to the offender; whether the witness had seen or known this person in the past; whether the identification was a product of the witness' own recollection; and the credibility of the witness." *State* v. *Davis*, 198 Conn. 680, 685, 504 A.2d 1372 (1986). The defendant's claim is predicated upon the trial court's refusal to give the *Telfaire* charge after the jury had requested clarification of the court's original instruction on identification testimony, a factual scenario that is

The opinion of the Appellate Court sets forth many of the facts that the jury reasonably could have found. "[At approximately 9:45 p.m. on] February 28, 1994, Patsy Cobbs, while purchasing food in a pizza shop located on the corner of Bulkeley Avenue and Park Street in Hartford, noticed the defendant looking at her through the window of the shop. While walking home, she was approached by the defendant, who then pulled a handgun from his pocket, pointed it at her head and demanded money. The victim gave the defendant a pouch in which she kept her money,[3] and the defendant grabbed her food and fled.

"Officer John Inho was dispatched to the scene, and the victim described her assailant to Inho as a tall, slim black male in his late twenties or early thirties, wearing a black Starter jacket with lettering across the back that may have been the Raiders or Lakers logo and wearing black jeans and a black wool cap. Inho searched the area with the victim in his patrol car but failed to find the suspect. The officer drove the victim home.

"On that same evening, Nelson Bogan, the victim's boyfriend . . . while walking on Capitol Avenue [with Joaquin Marvin], noticed a slim black male wearing a black jacket with a label on the back . . . running very fast toward them and into an apartment building at 1052 Capitol Avenue.[4] A short time later, Yvonne Brown approached Bogan and Marvin and offered to sell the two men a stereo. Brown, Bogan and Marvin went to Brown's apartment located at 1052 Capitol Avenue. Bogan . . . [later testified at trial] that the man [he]

---

not likely to arise at a new trial. Accordingly, we do not reach the second certified issue.

[3] The victim testified that her pouch contained between $180 and $190 at the time she left her apartment to go to the pizza shop.

[4] Marvin's testimony, however, indicates that he did not recall seeing a slim black male running toward Bogan and him.

had seen earlier running toward [Marvin and him] on Capitol Avenue was present in the apartment.[5] While walking home after deciding not to purchase the stereo, Bogan and Marvin met Kimberly Mobley, a neighbor of the victim and a witness to the robbery from her third floor apartment window,[6] and Erica Cobbs, the victim's daughter, who informed them of the robbery. Bogan went to . . . [the apartment that he shared with the victim] and, after hearing her describe the robber, realized that her description matched [that] of the person [who he had seen] running on Capitol Avenue. Bogan and Marvin began to search for the [person they believed was the] robber and found him with Brown on Park Street. The [suspect, who eventually was identified as the defendant,] ran away when they approached.

"Bogan and Marvin went to Capitol Avenue where they stopped Inho to tell him that they were chasing the [person who had robbed the victim.] They were soon joined by the defendant and Officer Antoni Kozieradzki, who was investigating the defendant's complaint that two men were chasing him. [After Bogan and Marvin identified the defendant as the person they had been chasing] Inho and Kozieradzki drove the defendant to the victim's apartment. When they arrived, Bogan went to the victim's apartment and brought her to the police car. The victim identified the defendant as the person who had robbed her."[7] *State* v. *Askew*, supra, 44 Conn. App. 281–83.

---

[5] At the time Bogan was in the apartment, however, he did not associate the man in the apartment with the man he had seen running into 1052 Capitol Avenue. In addition, Bogan testified that the man in the apartment was not wearing a jacket and, in response to the defendant's inquiry as to whether the man appeared to be out-of-breath or perspiring, Bogan stated that the man seemed "normal."

[6] Although Mobley testified that she had witnessed the robbery and described the robber as a tall, slim, black male wearing a black and white Raiders jacket, she did not identify the defendant or any other person as the robber.

[7] The state did not introduce any other evidence at trial relating to the robbery, such as the gun allegedly used by the defendant, the stolen money,

Following the jury's guilty verdict, the trial court rendered judgment sentencing the defendant to a term of imprisonment of twenty years. The defendant appealed to the Appellate Court, claiming that the trial court improperly: (1) denied his motion to suppress the victim's out-of-court and in-court identifications; (2) excluded the victim's felony larceny conviction; (3) refused to instruct the jury in accordance with *United States* v. *Telfaire*, 469 F.2d 552 (D.C. Cir. 1972);[8] and deprived him of a fair trial by its cumulative actions. The Appellate Court rejected these claims, and this certified appeal followed. Because we conclude that the trial court abused its discretion in excluding the victim's felony conviction and, further, that the improper exclusion of the conviction was harmful,[9] we reverse the judgment of the Appellate Court.

The following additional facts are relevant to our resolution of the defendant's claim. After the jury had been selected, and immediately prior to the commencement of evidence,[10] the state requested a determination from the court regarding the admissibility, for impeachment purposes, of the victim's and Bogan's prior criminal convictions. The victim had a fourteen year old misdemeanor conviction of larceny and a ten year, seven month old conviction of larceny in the second degree, a felony. With respect to the latter conviction,

---

or the victim's money pouch. Inho, who was in charge of the police investigation of the robbery, testified that he had no knowledge as to whether any such evidence had been recovered.

[8] See footnote 2 of this opinion.

[9] The defendant also claims that the trial court's exclusion of the victim's second degree larceny conviction deprived him of his rights under the confrontation clause of the sixth amendment to the United States constitution. We need not decide this claim, however, in light of our conclusion that the trial court abused its discretion in precluding the defendant from using the victim's felony conviction for impeachment purposes and, furthermore, that the exclusion of the conviction was harmful.

[10] Jury selection commenced on January 23, 1995, and the evidentiary portion of the trial began on January 31, 1995.

the victim had received a suspended sentence and a period of probation, both of undisclosed duration, on July 6, 1984. Bogan had been convicted of third degree arson, a felony, on or about March 20, 1984. After serving a prison term for that offense, he was paroled on May 1, 1985.[11]

Although the defendant indicated that he did not intend to use the victim's prior misdemeanor conviction for impeachment purposes, he claimed that he was entitled to impeach the victim with her felony larceny conviction, noting that "[i]f we're applying a ten year standard . . . it's just barely more than ten years, and certainly we feel that it would go towards credibility." The court rejected the defendant's request, stating: "It would seem to come under the application drawn from [the] federal rules by the Connecticut Supreme Court, and therefore the court will restrict . . . any inquiry of a felony over ten years. And this would be over ten years."[12] The state did not object to the defendant's use

[11] Bogan also had several other criminal convictions. The defendant, however, did not contest the state's claim that those convictions were not admissible for impeachment purposes.

[12] The entire colloquy between the trial court and the parties regarding the admissibility of the victim's prior convictions was as follows:

"[Rosita Creamer, assistant state's attorney]: May we take up, at this point, your Honor, what might be allowed by way of impeachment [regarding the] convictions of Mr. [Bogan] and [the victim]. With respect to [the victim] the two convictions I disclosed include a misdemeanor larceny from over fourteen years ago and a felony larceny that is more than ten years old. The state's claim would be that both of these are remote and ought not to be permitted to be used to impeach her.

"[Martin Zeldis, defense counsel]: We do not claim the fourteen or fifteen year old misdemeanor larceny. We do claim the . . . 1984 [conviction of] larceny in the second degree. I don't know what the . . . outcome of that particular matter was. If she spent any time incarcerated, that certainly would be excluded. If we're applying a ten-year standard, in any event if it's more than ten years, it's just barely more than ten years, and certainly we feel that it would go towards credibility. We claim the matter.

"Ms. Creamer: I wouldn't characterize it as barely more than ten years because the arrest was March 29, 1984, so the incident was at least that day or earlier. And we will shortly be at the eleven-year mark for that. The

of Bogan's arson conviction for impeachment purposes.[13]

Prior to the commencement of trial, the defendant filed a motion in limine seeking to exclude evidence of his prior convictions in the event he elected to testify at trial.[14] After a hearing on the defendant's motion prior

conviction, according to the information I have, was July 6, 1984, so it's well over ten and a half years.

"The Court: It would seem to come under the application drawn from [the] federal rules by the Connecticut Supreme Court, and therefore the court will restrict . . . any inquiry of a felony over ten years. And this would be over ten years.

"Mr. Zeldis: Your honor—

"The Court: Unless you can show us within a shorter time.

"Mr. Zeldis:—the only thing that I would inquire as to is my understanding of the application of this ten-year rule is that it does not include—or there's sort of like a tolling for any period of time where the person was out of circulation and unable to—

"The Court: Well, I assume that that conviction did not result in incarceration.

"Ms. Creamer: It did not. According to what I have, it was a suspended sentence and a period of probation.

"Mr. Zeldis: That satisfies my inquiry. I do, for the record, just take an exception to the court's ruling.

"The Court: Exception may be noted."

[13] The defendant argued, and the trial court agreed, that the age of Bogan's arson conviction should be calculated from the date on which he had completed his term of incarceration for that offense rather than from the date of the judgment of conviction. Thus, under that calculation, Bogan's conviction was less than ten years old as of the date of the trial. The court also ruled, without objection, that no reference was to be made regarding the title of Bogan's offense. See State v. Pinnock, 220 Conn. 765, 780, 601 A.2d 521 (1992) ("[t]o avoid unwarranted prejudice to the witness, when a party seeks to introduce evidence of a felony that does not directly bear on veracity, a trial court ordinarily should permit reference only to an unspecified crime carrying a penalty of greater than one year that occurred at a certain time and place").

[14] In his motion, the defendant represented that he "would like to testify at trial in his own behalf." Although the motion revealed that he had "some criminal convictions," the defendant did not disclose either the nature or the dates of those convictions. In support of his motion, the defendant contended that the convictions were "either too minor, too remote or [they had] a prejudicial value which far [outweighed their] probative value on the issue of credibility."

to his trial testimony, the court granted the defendant's motion with respect to his prior misdemeanor conviction, but denied the motion with respect to his three year old felony conviction of third degree robbery. In light of the court's ruling, the defendant, on direct examination, testified that he had been convicted of a felony in 1992.[15]

The assistant state's attorney, in her rebuttal closing argument, referred to the defendant's felony conviction, remarking: "Well, what details did we get from the defendant, and how credible is the defendant? First of all, he's a convicted felon. He was convicted in 1992 of a felony." Shortly thereafter, the assistant state's attorney commented: "[U]nlike the defendant and Yvonne Brown, there is no reason for you to question [the victim's] credibility. Mr. Marvin said, 'She's the one who looked in the robber's face. She's the one who can say whether it was the defendant.' And she has said so, continuously, steadfastly, and courageously, if you credit her testimony."

Finally, in its charge to the jury, the trial court, without objection, instructed the jury regarding the witnesses' prior felony convictions as follows: "[In] this case, you have received testimony concerning Mr. Bogan that he was . . . convicted of a felony in 1984, and of the defendant that he was convicted of a felony in 1992. It is the law in this state to allow into evidence past convictions of felonies against any witness who testifies, to test his credibility. Likewise, explanations can be offered to show such convictions should have little or no effect on [the] truth or veracity of such [a] witness. You, as the fact finders, may apply such weight as you determine to the evidence of such convictions and the explanations offered to minimize the effect on

---

[15] The state did not seek to introduce the title of the defendant's felony offense.

a witness' truthfulness. Such evidence is only admitted to test the truthfulness of such witness, and not to show a propensity for the commission of a crime or of bad character."

We next set forth the well established principles that govern our review of the defendant's claim. "The credibility of a witness may be attacked by introducing the witness' conviction of a crime if the maximum penalty for that conviction is imprisonment exceeding one year. See General Statutes § 52-145 (b);[16] *State* v. *Braswell*, 194 Conn. 297, 307, 481 A.2d 413 (1984), cert. denied, 469 U.S. 1112, 105 S. Ct. 793, 83 L. Ed. 2d 786 (1985)." (Internal quotation marks omitted.) *State* v. *Carter*, 228 Conn. 412, 430, 636 A.2d 821 (1994). Recognizing that "the inherent authority of the trial court to exclude evidence where its prejudicial tendency outweighs its probative value is particularly applicable to prior convictions otherwise qualifying for admission"; (internal quotation marks omitted) *State* v. *Wright*, 198 Conn. 273, 278, 502 A.2d 911 (1986); "[t]hree factors have usually been identified as of primary importance in considering whether a former criminal conviction is to be admitted: (1) the extent of the prejudice likely to arise; (2) the significance of the commission of the particular crime in indicating untruthfulness; and (3) its remoteness in time. *State* v. *Nardini*, 187 Conn. 513, 522, 447 A.2d 396 (1982)." (Internal quotation marks omitted.) *State* v. *Carter*, supra, 430; accord *State* v. *Sauris*, 227 Conn. 389, 409, 631 A.2d 238 (1993). Moreover, "[a]lthough we have left to the trial court the responsibility for determining whether, in a particular case, a witness' criminal conviction may be excluded on the grounds that it is too old, we have sanctioned a general

[16] General Statutes § 52-145 provides in relevant part: "Certain witnesses not disqualified. Credibility. . . .

"(b) A person's interest in the outcome of the action or his conviction of crime may be shown for the purpose of affecting his credibility."

guideline for the determination of remoteness that parallels rule 609 (b) of the Federal Rules of Evidence.[17] Rule 609 (b) establishes a ten year limitation from conviction or release from resulting confinement upon the use of the conviction for impeachment purposes unless the probative value of the conviction substantially outweighs its prejudicial effect." (Internal quotation marks omitted.) *State* v. *Carter*, supra, 431. We have recognized, however, that "convictions having some special significance upon the issue of veracity surmount the standard bar of ten years and qualify for the balancing of probative value against prejudice. *State* v. *Nardini*, supra, 526 . . . ." (Internal quotation marks omitted.) *State* v. *Cooper*, 227 Conn. 417, 436, 630 A.2d 1043 (1993). Finally, "[w]e will not disturb the trial court's determination as to the admissibility of a prior conviction to impeach a witness absent an abuse of discretion"; *State* v. *Carter*, supra, 430–31; and "a showing by the defendant of substantial prejudice or injustice. *State* v. *Alvarez*, 216 Conn. 301, 306, 579 A.2d 515 (1990); *State* v. *Hernandez*, 204 Conn. 377, 390, 528 A.2d 794 (1987)." (Internal quotation marks omitted.) *State* v. *Beliveau*, 237 Conn. 576, 592, 678 A.2d 924 (1996); see *State* v. *Hines*, 243 Conn. 796, 801, 709 A.2d 522 (1998); *State* v. *Small*, 242 Conn. 93, 109–10, 700 A.2d 617 (1997). With these principles in mind, we now turn to the defendant's two part claim: first, that the exclusion of the victim's felony conviction constituted an abuse of discretion; and second, that the impropriety entitles him to a new trial under the circumstances of this case.

---

[17] Rule 609 (b) of the Federal Rules of Evidence provides in relevant part: "Evidence of a conviction under this rule is not admissible if a period of more than ten years has elapsed since the date of the conviction or of the release of the witness from the confinement imposed for that conviction, whichever is the later date, unless the court determines, in the interests of justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect. . . ."

"We have noted that this federal standard is not our own, but rather serves as a rough bench mark in deciding whether trial court discretion has

## I

The defendant asserts that the trial court's decision to exclude the victim's second degree larceny conviction was improper. Specifically, he argues that, under the three factor test, the probative value of the victim's prior felony conviction substantially outweighed its prejudicial effect. He contends, moreover, that in evaluating the probative value of the victim's felony conviction, the importance of the victim's testimony is a relevant consideration. In particular, he maintains that, because the outcome of the case hinged on whether the jury chose to believe his testimony or that of the victim, the probative value of the victim's felony conviction was especially great.

As we have indicated, our determination of whether the trial court properly concluded that the victim's felony conviction was not admissible for impeachment purposes is guided by three primary factors, namely: (1) the extent to which the use of the conviction is likely to prejudice the party seeking its exclusion; (2) the significance of the commission of the particular crime as an indicator of untruthfulness; and (3) the conviction's remoteness in time. *State* v. *Carter*, supra, 228 Conn. 430. We conclude, first, that the extent of the prejudice likely to arise from the introduction into evidence of the victim's prior felony conviction was, at most, slight. "Evidence is prejudicial when it tends to have some adverse effect . . . beyond tending to prove the fact or issue that justified its admission into evidence." (Internal quotation marks omitted.) *State* v. *Geyer*, 194 Conn. 1, 15, 480 A.2d 489 (1984). "[T]he trial court always has the responsibility to consider the potential prejudice stemming from the impeachment of any witness with evidence of conviction of a crime";

been abused . . . ." (Citation omitted; internal quotation marks omitted.) *State* v. *Carter*, supra, 228 Conn. 431 n.19.

*State* v. *Cooper*, supra, 227 Conn. 435; and "we have never held that a trial court, in its discretion, may not consider the potential prejudice to a state's witness by the introduction of evidence purporting to bear on the witness' veracity." *State* v. *Pinnock*, 220 Conn. 765, 781, 601 A.2d 521 (1992). We have observed, however, that "[t]he danger of unfair prejudice is far greater when the accused, as opposed to other witnesses, testifies, because the jury may be prejudiced not merely on the question of credibility but also on the ultimate question of guilt or innocence." (Internal quotation marks omitted.) *State* v. *Cooper*, supra, 435. Indeed, as a general matter, it is unlikely that the use of a criminal conviction to impeach a state's witness will give rise to any undue prejudice.[18] Moreover, in this case, any possible risk of prejudice to the state was reduced substantially by the fact that the defendant sought to impeach the victim with a single prior conviction rather than multiple convictions. See *State* v. *Crumpton*, 202 Conn. 224, 230, 520 A.2d 226 (1987). We, therefore, can discern no reason—and the state has identified none—why the state would have suffered any undue prejudice from the use of the victim's felony conviction for impeachment purposes.[19]

Second, the crime underlying the victim's conviction is probative of a lack of honesty. "We have consistently recognized that crimes involving larcenous intent imply a general disposition toward dishonesty or a tendency

[18] See Fed. R. Evid. 609, advisory committee note to 1990 amendment ("[t]he probability that prior convictions of an ordinary government witness will be unduly prejudicial is low in most criminal cases"). We recognize, however, that there may be circumstances where the use of a prior conviction to impeach a state's witness will give rise to substantial prejudice to the state. In such circumstances, the trial court must determine whether the prejudice is so overriding as to outweigh the conviction's probative value.

[19] We note, moreover, that the state, in its closing argument, would have had the opportunity to minimize any possible prejudice by underscoring the fact that the victim's conviction was not recent.

to make false statements. *State* v. *Crumpton*, supra, [202 Conn.] 229; *State* v. *Geyer*, supra, [194 Conn.] 12." (Internal quotation marks omitted.) *State* v. *Cooper*, supra, 227 Conn. 435–36. "In common human experience acts of deceit, fraud, cheating, or stealing, for example, are universally regarded as conduct which reflects adversely on a [person's] honesty and integrity." *Gordon* v. *United States*, 383 F.2d 936, 940 (D.C. Cir. 1967), cert. denied, 390 U.S. 1029, 88 S. Ct. 1421, 20 L. Ed. 2d 287 (1968). Consequently, "[c]onvictions of this sort obviously bear heavily on the credibility of one who has been convicted of them. The probative value of such convictions, therefore, may often outweigh any prejudice engendered by their admission." *State* v. *Geyer*, supra, 12. Thus, the fact that the victim had been convicted of a felony larceny offense is a significant consideration favoring the admissibility of that conviction.[20]

Third, we conclude that the conviction, while exceeding our ten year benchmark for presumptive admissibility, is not so remote as to impair, to any meaningful degree, its probative value. "The probative value of a conviction upon the credibility of a witness obviously is related to the time when the crime occurred." *State* v. *Nardini*, supra, 187 Conn. 525. At the time the victim testified on January 31, 1995, her felony conviction was approximately ten years and seven months old, exceeding by only several months the ten year benchmark.[21] That benchmark, however, is not an absolute bar to the use of a conviction that is more than

[20] While we generally do not permit the title of an offense to be disclosed to a jury "when a party seeks to introduce evidence of a felony that does not directly bear on veracity"; *State* v. *Pinnock*, supra, 220 Conn. 780; the title of the offense at issue in this case, bearing as it does directly on veracity, may, at the discretion of the trial court, be disclosed to the jury.

[21] We decline the defendant's invitation to reconsider our method of calculating the age of a conviction for purposes of the balancing test. In adopting the ten year limitation period of rule 609 (b) of the Federal Rules of Evidence as a general guideline, we also adopted the alternative dates set forth in

ten years old, but, rather, serves merely as a guide to assist the trial judge in evaluating the conviction's remoteness. In circumstances where, as here, a conviction is only slightly more than ten years old, the age of the conviction, standing alone, is not likely to constitute a bar to the use of the conviction for impeachment purposes. Moreover, because the nature of the offense is a factor to be considered together with the age of the conviction in assessing probative value, we have previously approved the use of prior convictions involving a larcenous intent that were considerably more than ten years old at the time of trial.[22] See *State* v. *Cooper,*

that rule which establish the start of the period. See *State* v. *Sauris,* supra, 227 Conn. 409–10 ("[r]ule 609 [b] establishes a ten year limitation from conviction or release from resulting confinement"). We also have held that the ending date for purposes of calculating the age of a conviction is the date on which the witness testifies at trial. Id., 410 ("[t]he probative value of a conviction in determining the credibility of a witness is related to the span of time between the conviction *and the proffered testimony*" [emphasis added; internal quotation marks omitted]).

The defendant asks us to consider, nonetheless, "whether specific circumstances might warrant the conclusion that the ten-year period can be deemed to end at some time prior to trial." In support of his request, the defendant cites to two federal cases in which the age of the witness' conviction was calculated from the date of conviction or release from confinement to the date of "the present offense"; *United States* v. *Foley,* 683 F.2d 273, 277 n.5 (8th Cir.), cert. denied, 459 U.S. 1043, 103 S. Ct. 463, 74 L. Ed. 2d 613 (1982); and the date that the trial commenced. *United States* v. *Cohen,* 544 F.2d 781, 784 (5th Cir.), cert. denied, 431 U.S. 914, 97 S. Ct. 2175, 53 L. Ed. 2d 234 (1977). Rule 609 (b) is silent, however, with respect to what ending date the courts shall use for purposes of computing the age of the conviction. Moreover, among the federal courts, "[t]here has . . . been some uncertainty as to what event concludes the running of the 10-year period. The period has been variously measured up to the date the trial commences, the date the witness testifies, or the date of the charged crime. The time of the testimony appears most appropriate since the jury must determine credibility at that moment." 4 J. Weinstein & M. Berger, Weinstein's Federal Evidence (2d Ed. 1997) § 609.07 [3], p. 609-48. Because we agree that "[t]he time of testimony [is] most appropriate since the jury must determine credibility at that moment"; id.; we decline to modify the general rule that we have previously established.

[22] The fact that the victim's felony conviction was more than ten years old appears to have been the primary, if not the exclusive, reason why the

supra, 227 Conn. 436 (trial court properly allowed state to impeach defense witness with his twenty-six year old conviction of breaking and entering with criminal intent, a crime "associated with larceny and, therefore, implying dishonesty in the general sense" [internal quotation marks omitted]); *State* v. *Nardini*, supra, 187 Conn. 529–30 (trial court did not abuse its discretion in permitting state to impeach defendant with his twenty-five year old conviction of breaking and entering); see also *State* v. *Prutting*, 40 Conn. App. 151, 162, 669 A.2d 1228, cert. denied, 236 Conn. 922, 674 A.2d 1328 (1996) (no abuse of discretion by trial court in permitting state to impeach defendant with two eleven year old convictions of robbery, a crime that "reflect[s] larcenous intent" and is "probative of dishonesty in the general sense"); *State* v. *Bailey*, 32 Conn. App. 773, 784, 631 A.2d 333 (1993) (trial court properly allowed state to use, for impeachment purposes, defendant's thirteen year old conviction of burglary with larcenous intent because that offense is "highly probative of . . . truthfulness and veracity"); *State* v. *Irving*, 27 Conn. App. 279, 289–90, 606 A.2d 17, cert. denied, 222 Conn. 907, 608 A.2d 694 (1992) (witness' robbery conviction, although more than ten years old, properly admitted for impeachment purposes).

In addition to these factors, the defendant contends that the trial court, in evaluating the probative value of the victim's prior felony conviction, should have also considered the fact that the state's case rested almost exclusively on the testimony, and hence the credibility, of the victim,[23] and, further, that the jury's determination of the defendant's guilt or innocence depended upon

trial court precluded its use for impeachment purposes. See footnote 12. "Remoteness, however, is only one of the factors to be considered." *State* v. *Cooper*, supra, 227 Conn. 436.

[23] It cannot be disputed that the state's case turned on the testimony of the victim, who was the only witness able to identify the defendant as the robber.

the comparative credibility of the victim and the defendant.[24] In support of his claim, the defendant relies on a number of federal cases that have recognized the importance of these considerations in applying the balancing test required under rule 609 (b) of the Federal Rules of Evidence, especially when, as here, the nature

[24] The state maintains that the defendant, having failed expressly to apprise the trial court that the victim's credibility was the decisive issue at trial; see footnote 12 of this opinion; may not now claim that the trial court should have considered this factor in deciding whether to allow the defendant to use the victim's prior felony conviction for impeachment purposes. Although we agree that it would have been preferable for the defendant to have articulated this point with specificity in his argument in support of the admissibility of the victim's conviction, we are not persuaded, in the particular circumstances of this case, that his failure to do so is fatal to his claim on appeal. "In reviewing a discretionary ruling we examine the evidence that was before the trial court at the time of its decision . . . ." *State* v. *Braswell*, supra, 194 Conn. 309. In this case, the trial court, immediately prior to the commencement of trial, conducted a two day evidentiary hearing on the defendant's motion to dismiss the information and his motion to suppress any pretrial or in-court identification of him. The victim, Inho, Kozieradski, Bogan and Marvin testified at the hearing. The victim testified in detail concerning the circumstances of the robbery, the description of the robber that she had given to Inho, Bogan and Marvin on the night of the robbery, and her subsequent identification of the defendant immediately following his apprehension. Bogan and Marvin testified that they had not witnessed the robbery. Bogan acknowledged, moreover, that he had relied on the description given to him by the victim when he commenced his search for the person who had robbed her. Finally, Inho testified that the victim was the only known eyewitness to the robbery able to identify the defendant as the robber. At the conclusion of the hearing, the court denied both of the defendant's motions.

In light of the detailed evidence adduced at this hearing, it is clear that the trial court was aware of the critical nature of the victim's testimony at the time it considered the defendant's request for permission to use the victim's felony conviction for impeachment purposes. Moreover, the trial court, prior to its ruling on the admissibility of the victim's felony conviction, had been informed that the defendant likely would testify on his own behalf and that he previously had been convicted of various crimes. Accordingly, we reject the state's claim that the defendant should be barred from raising his claim regarding the relative significance of the victim's credibility. We emphasize, however, that a defendant who seeks to impeach a key state's witness in circumstances like those presented in this case bears the burden of demonstrating to the trial court why the credibility of that witness is so critical to the case.

of the crime sought to be used for impeachment purposes bears directly upon the witness' credibility.

For example, in *United States* v. *Pritchard,* 973 F.2d 905, 909 (11th Cir. 1992), the court, in rejecting the defendant's claim that the trial court had improperly allowed the government to impeach the defendant with his thirteen year old burglary conviction, observed that the "[t]he crux of this case was a credibility issue, i.e., the credibility of [the government witness] versus that of [the defendant]." Moreover, because "[t]he jury had before it the criminal record of [the government witness] . . . [the defendant's] criminal record, or the absence thereof, took on special significance." Id. Other federal appeals courts have employed similar reasoning. See, e.g., *Zinman* v. *Black & Decker (U.S.), Inc.,* 983 F.2d 431, 434 (2d Cir. 1993) (plaintiff's sixteen year old conviction of making false statement admissible "where jury's assessment of [his] credibility was highly relevant to several disputed issues in the case"); *United States* v. *Brown,* 956 F.2d 782, 787 (8th Cir. 1992) (defendant's nearly twenty year old conviction of burglary admissible where "jury essentially had to choose between one version of events presented by the government's witnesses and another version presented by the defendant's"); *United States* v. *Murray,* 751 F.2d 1528, 1533 (9th Cir.), cert. denied sub nom. *Moore* v. *United States,* 474 U.S. 979, 106 S. Ct. 381, 88 L. Ed. 2d 335 (1985) (defendant's more than ten year old conviction of receiving stolen property admissible where "witness credibility was highly probative in order to resolve the significant conflict between [the defendant] and the Government's chief witness"); *United States* v. *Gilbert,* 668 F.2d 94, 97 (2d Cir. 1981), cert. denied, 456 U.S. 946, 102 S. Ct. 2014, 72 L. Ed. 2d 469 (1982) (defendant's more than ten year old conviction of mail fraud admissible where defendant's credibility would be "crucial issue" if he chose to testify); *United States* v. *Spero,*

625 F.2d 779, 780–81 (8th Cir. 1980) (defendant's twenty-two year old conviction of grand theft admissible where jury required to choose between crediting his testimony and that of government witness whose more than ten year old convictions were admitted); *United States* v. *Brown*, 603 F.2d 1022, 1027–29 (1st Cir. 1979) (defendant's more than ten year old larceny and burglary convictions admissible where his credibility, if he were to testify, would be pitted against that of another witness whose criminal record was in evidence); see also *United States* v. *Thomas*, 914 F.2d 139, 142–43 (8th Cir. 1990) (defense witness' more than ten year old conviction of drug possession admissible where credibility was " 'paramount' " because witness' testimony directly contradicted that of police on key issues); *Gordon* v. *United States*, supra, 383 F.2d 936 (case decided before adoption of Federal Rules of Evidence; defendant's prior conviction admissible where complainant's conviction admitted, not in " 'eye for an eye' sense"; id., 941; but because the "verdict necessarily turned on how the jury resolved the credibility contest between the complainant and the defendant"; id., 938).

We find the reasoning of these cases to be persuasive. "When a 'case [would be] narrowed to the credibility of two persons—the accused and his accuser . . . in those circumstances there [is] greater, not less, compelling reason for exploring all avenues which would shed light on which of the two witnesses [is] to be believed.' *Gordon* v. *United States*, [supra, 383 F.2d 941]." *United States* v. *Ortiz*, 553 F.2d 782, 785 (2d Cir.), cert. denied, 434 U.S. 897, 98 S. Ct. 277, 54 L. Ed. 2d 183 (1977). In this case, the victim was the only person who claimed to be able to identify her assailant; consequently, both her out-of-court and in-court identifications of the defendant were essential to the state's case. Furthermore, since the victim's testimony was directly contradicted by the defendant, the case turned on the jury's

assessment of the relative credibility of the victim and the defendant.[25] Finally, the victim's felony larceny conviction had a direct and substantial bearing on her veracity.

As we have previously noted, "[the] balancing of intangibles—probative values against probative dangers—is so much a matter where wise judges in particular situations may differ that a lee-way of discretion is generally recognized. . . ." (Citations omitted; internal quotation marks omitted.) *State* v. *Harrell*, 199 Conn. 255, 262, 506 A.2d 1041 (1986). Moreover, "[i]n evaluating the separate ingredients to be weighed in the balancing process, there is no way to quantify them in mathematical terms." *State* v. *Nardini*, supra, 187 Conn. 528. For these reasons, we acknowledge that a trial court's refusal to allow a party to impeach a witness with a prior conviction that is more than ten years old will rarely give rise to a successful claim of abuse of discretion. In this case, however, the victim's felony conviction was only slightly past the ten year guideline for presumptive admissibility; the crime was highly probative of veracity; the prejudice, if any, arising from the defendant's use of the victim's conviction would have

---

[25] The defendant does not espouse, nor do we endorse, the view that "evidence of the criminal record of a . . . witness may always justify the admission of such evidence against [an opposing witness] . . . ." *State* v. *Nardini*, supra, 187 Conn. 529. We have recognized, however, that "[w]here a case may turn upon the comparative credibility of the defendant and a prosecution witness whose criminal record has come before the trier, it has been thought that the picture presented is less distorted if the criminal background of the defendant is also made known. *United States* v. *Spero*, supra, [625 F.2d] 781; *United States* v. *Brown*, supra, [603 F.2d] 1028; *United States* v. *DiVarco*, 484 F.2d 670, 677 (7th Cir. 1973); *Gordon* v. *United States*, supra, [383 F.2d] 941." *State* v. *Nardini*, supra, 527. Of course, it is equally true that, as in this case, when the comparative credibility of the victim and the defendant is determinative of the outcome of the trial and the jury is apprised of the defendant's criminal record, the "picture presented" is likely to be "less distorted" if the jury also is made aware of the victim's criminal record.

been minimal; the victim's testimony was essential to the state's case; and the outcome of the case depended upon the relative credibility of the victim and the defendant, whom the state was allowed to impeach with his prior felony conviction. In light of these considerations, we are persuaded that, in the particular circumstances of this case, the probative value of the victim's conviction outweighed any minimal prejudice its admission might have engendered. Consequently, we conclude that the trial court abused its discretion in precluding the defendant from using the victim's second degree larceny conviction for impeachment purposes.

## II

Our inquiry, however, does not end here. To establish that he is entitled to a new trial, the defendant must show not only that the trial court improperly barred him from using the victim's prior felony conviction, but also that the court's ruling caused him substantial prejudice. *State* v. *Hines*, supra, 243 Conn. 801; *State* v. *Small*, supra, 242 Conn. 109–10; *State* v. *Beliveau*, supra, 237 Conn. 592. We agree with the defendant's contention that he has satisfied this heavy burden.

As the defendant claims, the jury, had it known of the victim's prior felony conviction, would have had an objective reason for questioning the truthfulness of the victim's testimony, which constituted the only evidence linking the defendant directly to the crime. Moreover, the prejudice that resulted from the court's exclusion of the victim's felony conviction was compounded when the assistant state's attorney, in her closing argument to the jury, stated that, "unlike the defendant"—whom the assistant state's attorney had just described as a convicted felon—"there is no reason for you to question [the victim's] credibility." Finally, the prejudice to the defendant was further magnified by the trial court's jury instruction that "[i]t is the law in this state *to allow*

*into evidence past convictions of felonies against any witness who testifies*, to test his credibility." (Emphasis added.) This charge, which also contained an express reference to the defendant's felony conviction, carried the unintended implication that the victim, *in contrast to the defendant*, was a law-abiding person with nothing in *her* background to suggest a lack of credibility.

Finally, we have previously emphasized the fact that the victim's identification of the defendant as the person who robbed her was the cornerstone of the state's case. No other witness identified the defendant as the perpetrator, and the defendant denied any involvement in the robbery. Further, despite the fact that the defendant was apprehended within approximately one hour of the robbery, no physical evidence linking him to the crime was introduced into evidence. Consequently, the jury, in concluding that the state had met its burden of proving that the defendant was guilty of the robbery beyond a reasonable doubt, must have credited the victim's testimony and rejected that of the defendant. In these circumstances, where the comparative credibility of the victim and the defendant was the sole issue to be resolved by the fact finder, we agree with the defendant that the trial court's improper exclusion of the victim's felony conviction was so prejudicial as to undermine confidence in the fairness of the verdict. Accordingly, the defendant is entitled to a new trial.

The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to reverse the judgment of the trial court and remand the case for a new trial.

In this opinion BORDEN, BERDON and KATZ, Js., concurred.

MCDONALD, J., dissenting. In this case, the evidence was that the victim described the one who robbed her and detailed his clothing to a police officer. The victim's

boyfriend saw the defendant running into a building dressed as the victim had described him. Later, after the boyfriend learned of the robbery, he again saw the defendant on the street. When the boyfriend approached the defendant, he ran away and the boyfriend pursued him. The defendant ran to a police officer and the boyfriend met with the officer investigating the robbery. The officers then brought the defendant to the victim's apartment where the victim identified him as the robber. There was circumstantial evidence supporting the victim's identification.

The boyfriend had a less than ten year old felony conviction, as did the defendant. Both the boyfriend's and the defendant's convictions were admitted on the issue of credibility for impeachment. As to the victim's prior felony conviction, however, the trial court, after hearing the circumstances of the identification and the state's witnesses at a prior hearing, weighed the victim's felony record and decided not to admit it. The trial court did so, principally, because the conviction was more than ten years old. In excluding the victim's prior felony conviction, the trial court followed the guidance we provided in *State* v. *Nardini*, 187 Conn. 513, 525–26, 447 A.2d 396 (1982), suggested by rule 609 (b) of the Federal Rules of Evidence. With respect to rule 609 (b), which serves as "a rough bench mark" of our law; id., 526; the Second Circuit has stated that convictions more than ten years old should be admitted "very rarely and only in exceptional circumstances." (Internal quotation marks omitted.) *Zinman* v. *Black & Decker (U.S.), Inc.*, 983 F.2d 431, 434 (2d Cir. 1993); accord *United States* v. *Mahler*, 579 F.2d 730, 736 (2d Cir.), cert. denied, 439 U.S. 991, 99 S. Ct. 592, 58 L. Ed. 2d 666 (1978); see also 4 J. Weinstein & M. Berger, Weinstein's Federal Evidence (2d Ed. 1997) § 609.07 [1], p. 609-43. For the benefit of litigants and the trial courts, we should either abandon *Nardini* or continue to follow it. Now, we do

not know whether there is a tidal benchmark for the admission of old convictions.

The majority concludes that the trial court abused its discretion. Yet, "[t]he action of the trial court is not to be disturbed unless it abused its legal discretion, and [i]n determining this the unquestioned rule is that great weight is due to the action of the trial court and every reasonable presumption should be given in favor of its correctness. . . . In determining whether there has been an abuse of discretion, the ultimate issue is whether the court could reasonably conclude as it did." (Internal quotation marks omitted.) *Eldridge* v. *Eldridge*, 244 Conn. 523, 534, 710 A.2d 757 (1998). It cannot be said that the trial court's ruling in this case was unreasonable. Had we served as the trial court, we might have ruled differently, but we should be careful not to substitute our judgment for that of the trial court, which saw and heard the witnesses, where reasonable minds might differ. See *Gillis* v. *Gillis*, 214 Conn. 336, 344, 572 A.2d 323 (1990).

Accordingly, I would find the trial court's ruling neither an abuse of discretion nor so prejudicial as to require a new trial.

I respectfully dissent.